### EX PARTE EVA JACOBSON.

No. 4547. Decided February 3, 1909.

**1.—Unlawful Assembly—Sunday Law—Public Amusement.**

Under articles 299, 300, 311, 313 and 315, Penal Code, with reference to unlawful assemblies, it is contemplated that something is done to other parties outside of and beyond those who are assembled, disturbing them in some way or interfering with their rights or bringing about a disturbance of the peace, and public amusements are not included in the category of these crimes.

**2.—Same—Case Stated—Admission Fee.**

Upon a charge in the pleadings of the State that the defendant and others unlawfully assembled for the purpose of opening a theater for public amusement on Sunday under article 199 Penal Code, and the statutes above quoted, the same would not constitute an unlawful assembly; nor would the same be a violation of the Sunday law unless an admission fee was charged.

### 3.—Same—Ejusdem Generis—Statutes Construed.

Under articles 299 and 300, Penal Code, inclusive, defining and classifying what constitutes an unlawful assembly, article 313 Penal Code, exempting therefrom a public meeting for lawful amusement, must be construed to include similar offenses as contained in said preceding articles of the Penal Code; that is, they must be of a character and kind as those set out in the preceding and kindred statutes. Giving a theatrical performance for the amusement of the people on Sunday or any other day would not be a disturbance of the peace simply as such.

### 4.—Same—Actress—Singer.

It was never contemplated by the law that an actress or singer traveling about entertaining the people with amusements, dancing and singing, that this was calculated to create a riot, or disturb the people or the public peace.

From Dallas County.

Original application for habeas corpus for release from a commitment under a complaint and information upon capias issued thereunder charging relator with the offense of participating in an unlawful assembly.

Among other things the relator alleged in substance in her petition that she is an actress; that she sings in theaters, and that to compel her to remain in the city of Dallas, Texas, to answer a complaint and information upon the above charge would be a great inconvenience and injustice to her, for the reason that she is under contract with a company to play in various and sundry theaters and opera houses within the State of Texas and other States, and that she had violated no law of the State of Texas.

The opinion states the case.

*Walker & Williams,* for relator.—Our statutes inhibiting an unlawful assembly are evidently based upon the common law definition of an unlawful assembly. In support of this proposition see 29 Am. & Eng. Enc. of Law, p. 342, sec. 2, and cases cited in foot note No. 2, and especially the Texas cases there cited, to wit: McGehee v. State, 23 Texas Crim. App., 330; Follis v. State, 37 Texas Crim. App., 535; Bradford v. State, 40 Texas Crim. App., 632; Holman v. State, 40 Texas Crim. App., 628; McKinney v. State, 43 Texas Crim. Rep., 387, 68 S. W. Rep., 176.

The common law definition of unlawful assembly has in it the elements of force and violence, and the gist of said common law definition is that the persons who come together and form such unlawful assembly are in an ugly frame of mind, or in such frame of mind that no one can foresee what will be the outcome of such assembly. It must be an assemblage in such a frame of mind, either at the time they assemble or after they assemble, as to excite alarm in the neighborhood and create terror and fear in the minds of the inhabitants of the vicinity where such assembly gathers. In support of this proposition see the common law definition of unlawful assembly quoted

from Hawkin's Pleas of the Crown, 29 Am. & Eng. Enc. of Law, p. 341, and the first foot note on said page. Also see other definitions under foot note No. 2 beginning on said page. Counsel also cited Muckenfuss v. State, 52 Texas Crim. Rep., 467.

*F. J. McCord,* Assistant Attorney-General. for the State.

DAVIDSON, PRESIDING JUDGE.—Applicant was arrested charged with being guilty of an unlawful assembly. The complaint and information allege that T. P. Finnegan, Lee Muckenfuss, Sol Block, Harry Sanders, Lewis Snyder, Nathan Florer, one Somers, one Starke, one Askeland, Clemenso Brothers, Eva Jacobson, one Dickinson, one Delmar and one Darrell did then and there unlawfully assemble and meet together with the intent and purpose to aid each other by selling tickets and by ushering and by acting and by singing, and by stage carpentering, and by scene shifting, and by dancing, and by receiving tickets, and by receiving money, and by counting money, and by acting as treasurer, and by handing out programs, and by counsel and advice to effect the illegal object, and to commit the offense, etc., being Sunday, or unlawfully and wilfully opening and permitting to be open for public amusement a theater and place of public amusement, to wit: the Majestic Theater, and did then and there on said Sunday permit a theatrical performance to be given and exhibited in said theater for public amusement, and for admission, to which a fee was then and there to be charged; and of which said theater and place of public amusement the Interstate Amusement Company was then and there proprietor, and T. P. Finnegan was then and there the agent and employee of said Interstate Amusement Company; and as such agent and employee did then and there intend to unlawfully and wilfully open and permit to be open for public amusement said theater and place of public amusement, and to then and there on said Sunday permit a theatrical performance to be given and exhibited in said theater for public amusement, and for admission, to which a fee was then and there to be charged, and that said parties (naming them) well knowing the intent and purpose of the said  .  .  .  did then and there unlawfully assemble and meet together with the said T. P. Finnegan and each other with the intent and purpose as aforesaid. This is the substance and almost literal reading of the complaint and information.

We are led to believe that the purpose of these pleadings was to charge applicant and the other named parties, with a violation of the statute prohibiting an unlawful assembly, though the pleading has gone further, and may have intended to include the execution of such unlawful assembly, which under the statute would constitute a riot. If we understand fully the pleadings, it was intended to charge the parties with opening the Majestic Theater, a place of amusement on Sunday, and with acting together in doing so; and that there was to be an admission fee charged. Evidently the theory of the prose-

cution is, that it constituted an unlawful assembly for these parties to open said theater and entertain the crowd who would assemble at said theater on Sunday.

The statute, article 199 of the Penal Code, prohibits the owner, agent or employee of a place of public amusement from opening said place of amusement on Sunday, if there be a fee charged for admission. Said article is as follows: "Any merchant, grocer, or dealer in wares or merchandise, or trader in any business whatsoever, or the proprietor of any place of public amusement, or the agent or employee of any such person, who shall sell, barter or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday, shall be fined, etc. The term 'place of public amusement' shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited, and for which an admission fee is charged." A reading of this law makes it evident that the opening of places of amusement is not a violation of the law, unless an admission fee is charged. If an admission fee is not charged, though the place of amusement is opened on Sunday, under the terms of the statute, there would be no violation of its provisions. It will be observed from the contents of the pleadings under which this suit is prosecuted that relator is charged, along with the manager, T. P. Finnegan, with an unlawful assembly to violate the Sunday law. It will be further observed that the opening of places of amusement and giving entertainments is not a violation of the law, but authorized, except when the place of amusement is opened on Sunday and an admission fee is charged.

Article 313 of the Penal Code is as follows: "No public meeting for the purpose of exercising any political, religious or other lawful rights, no assembly for the purpose of lawful amusement or recreation, is within the meaning of this chapter." The chapter here referred to defines unlawful assembly and the different acts which would bring the parties within the definition of an unlawful assembly. Article 299 of the Penal Code defines this violation as follows: "An unlawful assembly is the meeting of three or more persons with intent to aid each other by violence or in any other manner either to commit an offense or illegally to deprive any person of any right, or to disturb him in the enjoyment thereof." Articles 300 to 311 inclusive, set out the purposes for which an unlawful assembly is prohibited. Without copying these statutes, an inspection of them shows that unlawful assemblies are prohibited when the meeting has been to prevent the holding of a public election, or to prevent any particular person or persons from voting at such election, or to oppose or prevent the execution or enforcement of any law of the State, or the lawful decree or judgment of a court in a civil action, or to effect the rescue of a prisoner lawfully convicted of a capital offense, or to effect the rescue of any person lawfully convicted of a felony less than capital, or to rescue any person arrested or imprisoned for a capital offense before

trial, or to rescue a person lawfully arrested or imprisoned for any felony less than capital, or to rescue a person accused of a misdemeanor, where the fine is not exceeding two hundred dollars, or to prevent or oppose the sitting of any lawful court, board of arbitrators or referees, or to prevent the collection of taxes, or other money due the State, or to prevent any person from pursuing any labor, occupation or employment, or to intimidate any person from following his daily avocation, or to interfere in any manner with the labor or employment of another, or to alarm and frighten any person by appearing in disguise, so that the real persons so acting and assembling can not be readily known, and by using language or gestures calculated to produce in such person the fear of bodily harm, or to repair to the vicinity of any residence, and to disturb the inmates thereof by loud, unusual or unseemly noises, or by the discharge of firearms, or to effect any illegal object other than those mentioned, providing, as above stated, in article 313 of the Penal Code, that no public meeting for the purpose of exercising any political, religious or other lawful rights, no assembly for the purpose of lawful amusement or recreation, is within the meaning of this chapter. It is provided further by article 315 of the Penal Code that: "If the persons unlawfully assembled together do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot."

The Legislature classifying the different offenses of the State has placed unlawful assemblies and riots under the general heading of "offenses against the public peace." If the applicant and those charged with her are not within the definition of the term 'unlawful assembly,' guilty of assemblying for the purpose of disturbing the peace, then the provisions of this chapter will not apply. As before seen, under the terms of article 199 of the Penal Code, theaters and places of amusement of that character are not classed as disturbances of the peace, but are authorized by law, except when taking place on Sunday, and even not then are they violations of the law unless an admission fee is charged. We think it very clear both under the statute and at common law, and our statute seems to follow the common law, that an unlawful assembly could not occur except when it contemplated a disturbance of the peace in some form or the injury of the rights of individuals or to in some way terrify others. It does not seem to be contemplated, under any phase of the statute, nor was it so at common law, that the parties assemblying could violate the statute, when they were simply carrying on a business of their own legitimately, or one that was not violative of the law or the rights of others. In other words, an unlawful assembly could not be composed of persons, nor would the offense be such if the parties assembled intended only to carry on their ordinary business, even though it should occur on a day and in a manner not authorized by law, unless their actions would in some way disturb the rights of others, or the public rights.

Vol. 55 Crim.—16.

In order then, under the statutes we have noticed, to constitute the parties charged in the pleadings with an unlawful assembly, it would be necessary to charge an admission fee. Without this there could be no violation of the Sunday law in opening theaters. The parties would have a perfect right to assemble and give the entertainment, if the admission fee was not charged. It would hardly be contended then that an assembly would be an unlawful one, giving an entertainment for the amusement of the public without charging the fee, and it would be just a little difficult to understand how the charging of the admission fee could constitute a disturbance of the peace or lead to a riot, or injure the rights of any person who might attend such place of public amusement.

Under the terms of article 313 of the Penal Code it is not a violation of the unlawful assembly laws to hold a political meeting or a religious one, or to carry on a place of public amusement; and in construing these statutes as to what it takes to constitute an unlawful assembly, we must look to the prior statutes in order to determine what it would take to constitute this offense. In doing so we find that all these statutes contemplate doing something to other parties, outside of and beyond those who are assembled, disturbing them in some way or interfering with their rights or bringing about a disturbance of the peace. Public amusements, therefore, are not included in the category of these crimes; they are expressly excluded by the acts of the Legislature. Under the rule of *ejusdem generis,* article 313 of the Penal Code, must be construed to include similar offenses as the articles of the Code which precede it. This question was so thoroughly discussed and analyzed in an opinion by Judge Ramsey of this court, in the case of Muckenfuss v. State, 52 Texas Crim. Rep., 467, 107 S. W., 1131, that we deem it unnecessary to further review it. Under the rule of *ejusdem generis* those matters to be executed by the alleged unlawful assembly must be of a character and kind as those set out in the preceding and kindred statutes. Offenses of a different character than those can not be by construction placed within the terms of this statute. It would hardly be then contended, and would not be correct if the contention was made, that giving a theatrical performance for the amusement of the people would be a disturbance of the peace on Sunday or any other time. A disturbance of the peace simply as such, or the violation of the rights of the citizenship of our State would be the same on any other day as on Sunday. It certainly could not disturb the peace or be instrumental in disturbing the peace to entertain a crowd with such amusement. On the contrary, it is the very opposite of a disturbance of the peace to amuse and entertain a crowd or to hold religious services or to come together in political meetings. It could not be a disturbance of the peace to entertain at these places of amusement on Sunday, and not such a disturbance on any other day of the week. We are speaking of the mere fact of their gathering together for the purpose

of giving a theatrical performance and not of any riots that others may perform while it is in course of consummation. The act of entertaining or amusing an audience is not and can not constitute a disturbance of the peace, and has none of the elements of such offense.

It is alleged in the application for the writ of habeas corpus that the applicant is an actress or singer, and that she is in no way connected with the Majestic Theater, except in that capacity that she was a traveling singer and actress and belonged to a company that traveled about the country and entertained the people by acting and singing. Our statutes with reference to unlawful assemblies and riots never contemplated nor was it the purpose of the Legislature to say that in entertaining the people with amusements and dancing and singing, that it would create a riot or in any way disturb the people of the country and their rights as citizens or of the public peace. In fact, no other legitimate conclusion from the statute can be reached than that it was intended to mean exactly the opposite. It was intended to amuse and entertain and not impair the rights which belong to our people or citizenship.

We are of opinion, therefore, that from no possible standpoint could the applicant and those with her be guilty of a violation of our statute prohibiting an unlawful assembly.

Relator is ordered discharged.

*Relator discharged.*