E. L. McLeod v. The State.

No. 3569. Decided May 26, 1915.

Rehearing denied June 16, 1915.

**1.—Sunday Law—Moving Picture—Admission Fee.**

Where, upon trial of a violation of the Sunday Law by permitting a motion picture show for which an admission fee was charged, the evidence sustained the conviction, there was no reversible error. Davidson, Judge, dissenting.

**2.—Same—Admission Fee—Contribution Box—Evasion—Subterfuge.**

Where, upon trial of a violation of the Sunday Law, by permitting a moving picture show to be exhibited for an admission fee, the evidence showed that while defendant did not require an admission fee, he placed a glass jar near the ticket window on the outside before the show was opened, for the purpose of receiving donations from any person who wished to donate upon entering the show, and such donations were made, amounting to over $30, such was an evasion of the law, and the conviction is sustained. Davidson, Judge, dissenting.

**3.—Same—Words and Phrases—Admission Fee Charged—Contributions.**

Where, upon trial of a violation of the Sunday Law by exposing motion pictures for an admission fee, defendant contended that a literal construction should be given to the word "charge," that is, that a price was demanded before anyone was admitted to the show, held that such contention was untenable, where it was shown that defendant collected contributions by means of a receptacle which he placed where the ticket seller stood on other days of the week, in which he received contributions. Distinguishing Ex parte Jacobson, 55 Texas Crim. Rep., 240. Davidson, Judge, dissenting.

**4.—Same—Statutes Construed—Meaning of Words in Penal Code.**

Under article 10 of the Penal Code, this court must take into consideration the entire provision of said article, and ascertain the intent of the Legislature in the use of the words "admission fees charged," taking into consideration the context and subject matter, and if the intent can be ascertained, it must govern over the literal import of the words, without regard to grammatical rules. Following Walker v. State, 7 Texas Crim. App., 245, and other cases. Davidson, Judge, dissenting.

**5.—Same—Statutes Construed—Legislative Intent.**

Taking into consideration the entire provision of the Code, with reference to the violation of the Sabbath for opening places of public amusement, which shall be construed to mean theaters, and such other amusements as are exhibited, and for which an admission fee is charged, it is clear that it was the intent of the Legislature to prohibit any such place to be open on Sunday where remuneration was received and accepted by the proprietor for keeping his place

open, and giving such public amusement, and the facts in the instant case come within the scope of the law, and the violation thereof. Following Wallis v. State, 78 S. W. Rep., 231, and other cases. Davidson, Judge, dissenting.

**6.—Same—Legislative Construction—Judicial Precedent—Moving Pictures.**

Since this court construed the Sunday Law as prohibiting the operation of moving picture shows on Sunday for an admission fee, the Legislature convened and adjourned, and a bill, authorizing cities to permit moving picture shows to be operated on Sunday, was overwhelmingly defeated, it is clear that it was not the intent of the Legislature to permit such picture shows. Following Ex parte Lingenfelter, 64 Texas Crim. Rep., 50.

**7.—Same—Holy Scriptures—Natural Law—State Legislation—Sabbath.**

The Legislature, in enacting the Sunday Law, but followed the injunction of Holy Scripture, and the law of Nature in making it an offense to violate the Sabbath. Davidson, Judge, dissenting.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of a violation of the Sunday law; penalty, a fine of $20.

The opinion states the case.

*Baskin, Dodge, Baskin & Eastus,* for appellant.—Cited Ex parte Jacobson, 55 Texas Crim. Rep., 240.

On question of admission fee charged and words and phrases: Murray v. State, 21 Texas Crim. App., 620; Delesdeiner v. State, 7 id., 76; Holly v. State, 14 id., 502; Ex parte Woods, 52 Texas Crim. Rep., 588; Ex parte Roquemore, 60 id., 287; Slack v. State, 61 id.. 381; Dodson v. Burton, 81 Texas, 665; Engelking v. Wanel, 26 id., 469; Egan v. State, 68 S. W. Rep., 273.

On question of the insufficiency of the evidence: Savage v. State, 50 Texas Crim. Rep., 204.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—The information charges that appellant on the 21st day of March (Sunday) was the proprietor of a place of public amusement, a picture show, and permitted a moving picture show to be exhibited in said place of public amusement and for which an admission fee was charged. When he was tried he was adjudged guilty, and he brings the case to this court upon one assignment of error—that the evidence does not show that an admission fee was charged, and was, therefore, insufficient to sustain the judgment.

Appellant himself testified: "My name is E. L. McLeod. I am the owner and manager of the Isis moving picture show, located at No. 2403 North Main Street, in the City of Fort Worth. I have been operating this show for more than one year. It is fully equipped for a moving picture exhibition. The usual admission fee charged for admitting a person into this show on week days is five and ten cents.

On Sunday, the 21st day of March, 1915, I gave an exhibition of moving pictures in the afternoon and night of that day. The show was opened at 2 o'clock in the afternoon and continued open until 10 o'clock of that evening. No admission fee was charged, and no tickets were sold. The young lady who always sits at the ticket window during week days for the purpose of selling tickets was not there. All orderly persons desiring to witness the moving pictures on that day were admitted free and allowed to depart without being asked or required to pay an admission fee. I was personally in charge of the show and was in and about the premises during the whole of the afternoon and evening for the purpose of looking after the comfort of those attending the show, and to preserve order as it was usual for me to do on other days. No one else was on duty about the show that day except myself and the operator of the picture machine. I paid the operator for his services on that day. The music was provided by an electric piano, and the pictures exhibited were similar to those shown weeks days. Before the show was opened I placed a glass jar near the ticket window on the outside for the purpose of receiving donations from any person who wished to donate on entering the show. The donations dropped into the jar amounted to $30.50. I took charge of this money and applied it to my own use as I would any other money I considered my own."

It is thus seen that no tickets were sold, and no admission fee demanded; a receptacle was placed where the ticket seller stood on other days of the week, in which to receive contributions.

Our statute provides that the proprietor of any place of public amusement who shall permit his place of public amusement to be open for the purpose of traffic or public amusement on Sunday shall be fined not less than $20 nor more than $50. If the statute stopped there, there could be no question that the above state of facts would render appellant guilty of violating the law, but in the statute it is stated, "the term place of public amusement shall be construed to mean circuses, theaters and other such amusements as are exhibited and for which an admission fee is charged." Appellant contends that a literal construction should be given to the word "charged,"—that is, that a price was demanded before one was admitted to the show, and cites us to the case of Ex parte Jacobson, 55 Texas Crim. Rep., 240, in which the following language was used: "A reading of the law makes it evident that the opening of places of amusement is not a violation of the law, unless an admission fee is charged. If an admission fee is not charged, though the place of amusement is open on Sunday, there would be no violation of its provisions." While we do not question the rule of law there announced, if a proper construction is given to the words "admission fee charged," yet such expression of opinion in that case was but obiter dicta. The question was not involved in that case, for in that case the opinion makes it plain that an admission fee was charged, demanded and received from each and every person who entered the theater. The question in that case was solely whether or not the appellant in that case, with others, was guilty of an unlawful

assembly. That and that alone was decided. Appellant also refers us to article 10 of the Penal Code, which reads: "Words which have their meaning specifically defined should be understood in that sense, though it be contrary to their usual meaning, and where words are not defined are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." Appellant would have us take the words "admission fee is charged" in the sense they are understood in common language, without taking into consideration the context and subject matter to which they are employed. This we are not authorized to do, for one provision is equally binding as the other, and both are binding on this court, and it has always been held in passing on the meaning of a word used in the Code, we must take into consideration the entire provision and ascertain the intent of the Legislature in the use of the word, taking into consideration the context and subject matter, and if the intent can be ascertained, it must govern over the literal import of the words, without regard to grammatical rules. Brooks v. Hicks, 20 Texas, 666; Walker v. State, 7 Texas Crim. App., 245; Rigby v. State, 27 Texas Crim. App., 55; Sartain v. State, 10 Texas Crim. App., 651; Albrecht v. State, 8 Texas Crim. App., 314; Barkley v. State, 28 Texas Crim. App., 99; Ex parte Robinson, 29 Texas Crim. App., 186.

Taking into consideration the entire provision of the Code that it shall be unlawful for any place of public amusement to be open on the Sabbath for public amusement, and that the term "place of public amusement" shall be construed to mean theaters and such other amusements as are exhibited and for which an admission fee is charged, it is, we think, clear that it was the intent and purpose of the Legislature to prohibit any such place to be open on Sunday where a remuneration was received and accepted by the proprietor for keeping his place open and giving such public amusement. In this case appellant placed a jar at the point where the ticket seller usually stood, a silent solicitor for contributions—pay for admission to the picture show. It was not compulsory, but if the "contributions" received on a few Sundays should be too small to pay the necessary expenses of running the picture show, we are satisfied the generosity of the proprietor would fall to a low ebb, and the picture show be closed on the Sabbath. The "silent solicitor of contributions" is but a substitute for a ticket seller, and such attempted evasion of the law can not be countenanced. It has been attempted before in this State, and failed. In the case of Wallis v. State, 78 S. W. Rep., 231, a saloon keeper kept his place of business closed, but handed out two bottles of beer that he claimed to have sold on Saturday, but was to keep on ice. Such acts were held to be but an attempt to evade the plain provisions of the law.

In the case of Knox v. State, 77 S. W. Rep., 13, the appellant kept his doors closed, but left one unlocked which people could open and go in. This was construed to be keeping his place of business *open* for the purpose of traffic, although all openings were closed. This

court said: "If even the doors were closed by defendant, as is here shown, and parties passed in and out as they pleased, that would be evidence of the fact that his saloon was open." In that case the word "open" was not given its literal meaning, but it was taken in connection with the other provisions of the Act·and given a sensible construction that would effectuate the purposes of the law. So in this case, it is our duty to give to the article of the Code the construction that will render it effective—prevent people from keeping open on Sunday their theaters and such place of public amusement where a remuneration is expected and received by the proprietor for so doing. In this instance it is shown he received $30.50 for the performances given on that day, which we are satisfied is about as much as he would have received had a ticket seller stood at the door and demanded an admission fee.

Since this court construed the Sunday law as prohibiting the operation of moving picture shows on Sunday in Ex parte Lingenfelter, a session of our Legislature has convened and passed. During its session a bill was introduced authorizing cities to permit moving picture shows to be operated on Sunday if they so desired, it being House Bill No. 182, and it was overwhelmingly defeated, the vote being 72 to 43,—thus making it clear that it was not the intent and purpose of the Legislature in enacting the Sunday law to permit moving picture shows to be operated on Sunday.

In the opening chapters of that holy book, the Bible, we find that "in the beginning God created the heavens and the earth. . . . And the heavens and the earth were finished, and all the host of them. And on the seventh day God finished his work which he had made; and he rested on the seventh day from all His work which he had made." We are further informed that man was made in the image of God, and from the beginning of time experience has shown that in creating man God so framed his handiwork that he also should rest from·his usual vocation and calling one day out of every seven—that it is the law of nature and if violated it brings its own punishment. In our younger days we may labor every day in the week during the year, but experience has demonstrated it shortens the days of our life. Such constant work in one's usual vocation weakens the mental power, undermines the physical strength, and in the end destroys the faculties thus brought into constant use. The State has recognized this, and commanded that we cease our usual labor one day in seven, believing that we would remain vigorous men and women for a greater length of time, and there would be less insanity and invalidism. We believe this to be true, and we think our Legislature so thought in enacting this statute. For the same reason our child labor laws were passed, our laws which fix eight hours as a day of labor, etc. The Legislature did not mean in saying that theaters and moving picture shows should not operate on Sunday, as some seem to think, that they were immoral, no·more than in saying that the dry goods merchant should not sell his goods on Sunday. They felt that the dry goods merchant, his clerks and em-

ployees needed the rest of one day in seven, and felt that the moving picture operator also needs this rest, that their days might be lengthened, and their mental and physical strength maintained to the end.

We are of the opinion that the facts show that appellant violated the law, and the trial court did not err in so holding.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 16, 1915.—Reporter.]

July 19, 1915.

DAVIDSON, Judge (dissenting).—In order to sustain a conviction under article 302 of the Penal Code it is necessary, first, that moving picture shows come within the denunciation of that article, and, second, that a fee must be charged for admission to its exhibitions. This is the statute and is fully recognized by the majority opinion in this case as well as the majority opinion in Lingenfelter v. State, 64 Texas Crim. Rep., 30. That moving picture shows eo nomine are not named in the statute is also fully recognized in the Lingenfelter case, and expressly so by the Legislature as shown by the action of that body at the general session of the Thirty-second Legislature in House Bill No. 497. For a review of the history of this matter and such action of the Legislature see the Lingenfelter case at page 59 of 64 Texas Criminal Reports. This court by a majority opinion held in that case that such shows are not mentioned, but they held them to be *theaters,* and by such holding brought or sought to bring *picture shows* within the terms of the statute. By the terms of the statute *theaters* run on Sunday are prohibited only when *an admission fee is charged.* The statute *does not mention moving picture shows.* I dissented in that case, believing, and yet believe, that *a moving picture show is not a theater.* This ought not really to be debatable. For a discussion of these questions see the opinion and dissenting opinion in Lingenfelter case. I' do not believe it would serve any useful purpose now to again review that phase of the statute.

Judge Harper for the majority seeks to fortify his opinion in this case by reciting the fact that the last Legislature declined to permit cities to authorize the operation of picture shows within the city limits. I am persuaded that he is not justified in this position. The action of the Legislature, if supporting him, in any sense at all, does so on the theory that the Lingenfelter case having held *picture shows to be theaters,* the Legislature, therefore, could not authorize the *city to set aside, annul or repeal a State law as to theaters.* The Legislature was correct, if it be conceded that the majority were correct in *holding picture shows to be theaters.* In the Act of the last Legislature above mentioned that body did not say nor intimate that a *picture show* was or *is included in article 302,* but it may be supposed that the Legislature recognized the fact that as the majority opinion of this court declared the law it should be binding on that body whether correct or

not. If they took that view of it, they may do so, or at least feel justified in refusing cities authority to suspend, repeal or annul a State law, that is, if the *picture show* is a *theater*. It is an axiomatic truth that a city *can not annul or suspend a State law,* and it is equally *axiomatic* that the Legislature *can not authorize* it so to do, and this by express provision of the Bill of Rights, for it is therein declared that no law shall be suspended except by the Legislature. That body *can not delegate* to any city the power to *suspend* or *repeal a State law.* But I do not agree that a moving picture show is a *theater*. I do not care to pursue this particular phase of the case further, and refer to what I had to say on this subject in my dissenting opinion in the Lingenfelter case.

It is held by the majority that "contributions" as shown by the facts were "admission fees," and, therefore, constituted what the statute inhibited, "fees charged for admission." It is conceded the contributions were entirely voluntary and a great many who attended the exhibitions did not contribute anything. I can not agree with such a conclusion. Charging a fee for admission is a demand, a condition precedent for attending the exhibition. Without its payment entry to the show is effectually barred. This is not so with reference to voluntary contributions. In the latter case the show was open to all who may desire to attend, and this without money and without price. Contributions made are voluntary and need not be paid. They are not demands, but in a sense generosity. This is too well understood by all church organizations and church attendants to admit of doubt or call for discussion. "Receiving contributions" or "taking up collections" is practically the only way revenue for church purposes is realized or obtained. It would strike the priest, preacher or layman as a novelty to assert that such contributions or collections constituted or is a demand of admission fee for attendance upon divine services or for the purpose of carrying on the great work of the Christian church of spreading the teachings of Christianity. It would be rather a revelation to the church to announce that attendance upon its services is dependent upon admission fees as a condition precedent to be paid in advance, or that to enjoy the blessings "of a free salvation" the communicant must pay stipulated sums of money as a prerequisite. A fee demanded as a prerequisite is a financial proposition to be complied with before the happening of the contingency. The contributions are voluntary and in church purposes supposed to be of an unselfish nature, and one that carries the idea of service and duty to others rather than to the donor. In view of these high ideals of duty and service the churchman, priest or layman is solemnly told that contributions and collections are only "evasions," subterfuges and duplicitous; that they are really fees for admission to attendance at church services. From any viewpoint—legal or otherwise—contributions should not be held to be "evasions." Evasion is not synonymous with admission and require payment under the demand, nor is a contribution box of the church a "silent solicitation for contributions" to be treated as a demand for payment. It is not a fee

charged for admission to church services or privileges. It is a gift of more or less value as the ability, willingness, generosity or conscience of the donor may suggest. It is conceded that no one was charged an admission fee. This ought to have ended the case. The distinction between voluntary contributions and exacting an admission fee is the very attribute that distinguishes a lawful gift from simony.

Back to the case. I feel persuaded that the evasion found by my brethren is a matter of construction in their opinion not to be found in the facts, or in the "silent solicitation for contributions" and is not sustained by the facts nor within the terms of the statute. All offenses in Texas must be plainly defined as a prerequisite to punishment of a citizen of this State. The statute does not authorize such conviction except upon charging an admission fee. Contributions and gratuities are not made part of the statute. The whole case is one of judicial construction and in effect judicial legislation. The statute nowhere mentions moving picture shows, and the Legislature refused to include such shows in the statute, as evidenced by their action above referred to, refusing to amend this article by inserting moving picture shows. See Acts 32nd Legislature; 64 Texas, p. 50. As I understand the decisions and the Act of the Legislature refusing to include moving picture shows, the conviction in this and the Lingenfelter case was by virtue of judicial construction, constituted it a judicial and not a legislative offense. Lingenfelter case, 64 Texas Crim. Rep., 59.

As to authority on the Sunday law we are cited to "the opening chapter in the holy book, the Bible," by the majority opinion. (Since filing this dissent Judge Harper has changed his original opinion so as to make "chapter" read "chapters,"—in referring to the opening chapter of Genesis.) I do not exactly understand the application of this citation to the case. The seventh day, rest or Sabbath, as it may be termed, is not found in "the opening chapter of the Bible," but is recorded in the second chapter of Genesis, second verse, where it is stated, "God ended his work on the seventh day," etc. The creation is generally supposed to have occurred prior to the seventh day, and it has always been generally understood that God created man during the six days, perhaps on the sixth, and it is true from the reading of the first chapter in Genesis that God gave him power of control and dominion over the earth and all created things. This authority is found in the "opening chapter of the holy book, the Bible." The seventh day, or day of rest, did not occur until after God had turned over this dominion to man and ordered him to "subdue" the earth, and placed him in control of all created things. After granting such authority to man *the Creator rested* on the seventh day. This created man superior to the Sabbath of the Jew or of Genesis. This was expressly recognized by the Savior on one occasion when the Pharisees chided Him on the fact that His disciples were violating the Sabbath day by plucking ears of corn, when He stated to them the Sabbath was made for man and not man for the Sabbath. This was the expressed recognition by the Savior of the power conferred upon man in the beginning. This citation by my

brethren from the Bible, had it been in the opening instead of the second
chapter, was certainly not seriously intended to sustain the proposition
that a failure to charge an admission fee was an "evasion of" the Sab-
bath on which the Creator rested.   The rest day of the Sabbath was a
cessation from labor.   It was not a financial proposition.   The ces-
sation from running the picture shows is not cessation from labor, but
it was, as construed, intended to prevent collection of fees and making
money.   The labor is just the same whether the fee is charged or is not
charged, provided the picture show operates.   The statute, therefore,
under consideration was not enacted on the theory that rest from labor
on the Sabbath is the issue, or for the reason that it was a cessation of
labor on Sunday, but is based exclusively and entirely on the proposi-
tion that such places of amusement can only be interdicted *when a fee
is charged*.   If the "admission fee" is eliminated, my brethren write
positively that it would not be a violation of the Sunday law to operate
the picture show.   So the *labor question does not enter into it*.   The
statute under consideration was not enacted for the purpose of cessa-
tion from labor but to prevent the owners of the establishment from
charging an admission fee to such places of amusement on Sunday.
The labor is just the same, whether an admission fee is charged or is
not charged.   But the citation is unfortunate in another way.   The
Sabbath of the Jew, or the Sabbath of Genesis, if not before abolished,
is substituted and abolished by the Act of the Legislature, article 302,
Penal Code, under discussion so far as the police power of this State is
concerned.   I suppose at this late day no one could contend or assert
it to be a fact, that the Jewish Sabbath, or the Sabbath of Genesis, is
the Sunday of the Christian world today.   Theologically and perhaps
from church history viewpoint the present Sunday may be regarded as
the Lord's day of the apostolic times, or the first day of the week in
honor of the resurrection, and not the seventh day of the Jews, or the
rest day of Genesis.   Whether the present Sunday is the first day of
the week or not, one thing seems to be definitely certain and settled,
and that is, it is not the Jewish Sabbath, and one of the statutes of
this State recognizes that fact, because it makes an exception under the
labor statute, Penal Code, articles 299-300, with reference to those who
observe and keep any day of the week other than our Sunday as their
day of rest.   Whether it be right or wrong, whether it be sacrilege or
not, it is clear that the Texas statute repealed, or at least does not
recognize the Jewish Sabbath under the terms of article 302 of the
Penal Code, but does recognize it to some extent in article 300 of the
Penal Code in the following language: "nor to any person who con-
scientiously believes that the seventh or any other day of the week ought
to be observed as the Sabbath, and who actually refrains from business
and labor on that day for religious reasons."   This language seems to
refer to article 299, which punishes those who labor, or compel, force
or oblige his employees, workmen or apprentices to labor on Sunday.
Most of the churches or denominations fail to recognize the Jewish
Sabbath as our Sunday, and the legislative department does not do so,

except as above quoted. Whether the Sunday of the present era is the Lord's day or the day observed by the earlier followers of Christianity may be shrouded in some doubt. That the early Christians seem to have adopted the first day of the week instead of the seventh day as their holy day, does not seem to admit of serious doubt. Whether Sunday, as we now term it, obtained its name from the observation of the first day of the week or whether it came under and by virtue of the royal edict of Constantine dated seventh of March, anno Domini, 321, is not entirely clear, but since the issuance of that royal edict we have had Sunday laws. Investigation historically of the origin of the Sunday law under this edict of Constantine and the causes which brought it about would be entertaining, but not necessary in this opinion. That Sunday law was very similar to article 299 of our present Penal Code. It interdicted laboring and following ordinary pursuits on Sunday except in cases of necessity. But whether it be the substitution of the Lord's day or the first day of the week, or the Sunday law of Constantine, or the Act of the Legislature would make no material difference so far as the Sabbath of Genesis is concerned. The Sabbath of Genesis is not the Sunday of Texas legislation. Our statute is purely a police regulation. It is not a church ordinance and can not be. Union of church and state can not legally occur in Texas. Our legislative bodies and political theories of government are interdicted from prescribing religious tests or mingling church with state. Every man in Texas is vouchsafed the right to worship God as he believes, and suitable laws have been enacted to protect him and those who believe and worship with him from intrusion from outsiders. "The Sabbath is made for man and not man made for the Sabbath." This is the same proposition announced in Genesis.

Therefore ʌ think my brother Harper was unfortunate in selecting the Jewish Sabbath, under the circumstances of this case, to support his contention that a "contribution" is an "evasion" of the statute and equivalent to a "fee charged for admission." I am still of the opinion that moving picture shows are not theaters, and agree with the Legislature as above quoted that there was no law against it in Texas, and it is only so by judicial legislation of my brethren making a moving picture show a "theater," not by legislative. I refer to my dissent in the Lingenfelter case and still hold there is no violation of the law in exhibiting moving picture shows on Sunday whether there be charged an admission fee or not. The statute does not include nor attempt to include moving picture shows within its terms. The judgment ought to be reversed and the prosecution dismissed. I can not, therefore, agree with my brethren in their conclusion.