CITY OF AMES, Appellee, v. JOSEPH B. GERBRACHT, Appellant.

**MUNICIPAL CORPORATIONS:** Ordinances—Validity—Moving Picture Shows. An ordinance which prohibits moving picture shows *on Sundays*, whether an admission fee is or is not charged, is an authorized and reasonable *regulation* of "theatrical exhibitions, shows, and exhibitions of all kinds," as provided in Sec. 703, Code, 1897.

**MUNICIPAL CORPORATIONS:** Ordinances—Validity—Inconsistency With State Statutes. A municipal ordinance which prohibits mov-

ing picture shows on Sunday, and punishes a violation by fine and imprisonment, is not legally ''inconsistent'' with the general state statute, Sec. 5040, Code, 1897, governing Sunday observance.

**STATUTES:** Unconstitutional in Part—Effect. A statute which grants to a municipality the unquestioned constitutional power to *regulate* a business, and which is *so employed* by the municipality, will not be declared unconstitutional because the said statute contains the . additional and possibly unconstitutional power to *prohibit* said business.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

SEPTEMBER 19, 1922.

THE defendant was convicted of the violation of an ordinance of the city of Ames, prohibiting the giving of moving picture shows on Sunday. He·appeals.—*Affirmed.*

*J. H. Patton* and *Stipp, Perry, Bannister & Starzinger,* for appellant.

*J. Y. Luke,* for appellee.

FAVILLE, J.—On April 10, 1922, the city council of the city of Ames duly enacted Ordinance No. 330, Section 1 of which provides as follows:

1. MUNICIPAL CORPORATIONS: ordinances: validity: moving picture shows.

''That on the first day of the week, commonly known as Sunday, no person, firm or corporation shall, within the city of Ames, give or conduct any theatrical performance, vaudeville show or motion picture show or exhibition.''

The succeeding section provides a penalty .for a violation of the ordinance.

The appellant was convicted in mayor's court of a violation of this ordinance, and was fined thereunder. He appealed to the district court, where the judgment was affirmed. It is conceded that said ordinance was duly and legally enacted. It is also conceded or established in the record that the appellant operates three moving picture theaters, or shows, in the city of Ames, and that, on two occasions after the passage of said ordinance, he operated said shows on Sunday.

This appeal involves two cases, No. 34911 and No. 34912, which are submitted together. They are substantially identical in their facts, except that the violations charged occurred on different Sundays, and in Case No. 34911, the usual admission fee was charged by the appellant. In Case No. 34912, no admission fee was charged, but a receptacle was placed in a handy and convenient place in the theater, wherein parties attending the show who were so disposed, placed so-called "contributions," no fixed charge being made.

The case turns upon the single question as to the validity of the ordinance in question.

I. The question of the power of the legislature to delegate to municipal corporations the right to regulate various forms of business cannot fairly be said to be an open question in this state. Chapter 4, Title V, of the Code deals with the general powers of municipal corporations. It covers a variety of subjects. By the various provisions of this chapter, the power conferred on cities and towns differs somewhat. The power is variously granted to "regulate," to "license," to "tax," to "suppress and restrain," to "regulate and control," and to "prohibit." Sometimes only one of these powers is conferred. Sometimes more than one power is given in the same section of the statute. It is not a matter of debate that, under our Constitution, the general assembly has the right to delegate to the municipal corporations of this state the power to enact ordinances consistent with these statutory enactments.

II. Our inquiry then is, "Has the legislature, by any statute, given to the municipal corporations of this state the power to enact an ordinance of the kind and character of the ordinance in question?" There are two statutes that have some bearing upon this question. Code Section 680 is the general statute of the state conferring general powers upon cities and towns, and is as follows:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, com-

fort and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days.''

Code Section 703 is as follows:

''They shall have power to regulate, license or prohibit circuses, menageries, theaters, theatrical exhibitions, shows and exhibitions of all kinds; but lectures on scientific, historical or literary subjects shall not come within the provisions of this section.''

It will be observed that Section 680 is broad and general in its terms, while Section 703 is more specific and definite. We address ourselves directly to the proposition as to whether or not Section 703 is specific and definite enough by its language to confer upon cities and towns the power to regulate, license, or prohibit moving picture shows.

Under this statute, express and definite power is given to municipalities to regulate, license, or prohibit ''theaters, theatrical exhibitions, shows and exhibitions of all kinds.'' Is this language broad enough to include moving picture theaters or shows, or what are more popularly known and designated as ''the movies?'' From an early day, we have held that only such powers can be exercised under a grant of power from the legislature to a municipal corporation as are clearly comprehended in the words of the act, or derived therefrom by necessary implication. *Clark, Dodge & Co. v. City of Davenport,* 14 Iowa 494; *Merriam v. Moody's Executors,* 25 Iowa 163; *Hanger v. City of Des Moines,* 52 Iowa 193.

In the recent case of *Ritchhart v. Barton,* 193 Iowa 271, in referring to a municipal ordinance, we said:

''The provision of the ordinance in question must be upheld if the specific power to enact same has been delegated by the legislature of this state to municipalities, or if it is not an unreasonable regulation under the powers delegated, although not specific.''

The legislature enumerated in said section of the statute ''theaters, theatrical exhibitions, shows and exhibitions of all kinds.'' Applying to this statute the familiar doctrine of *ejusdem generis,* we think there can be no other logical conclusion

than that moving picture shows are included within its terms. It is unnecessary that we enter into a consideration of the history of the theater and theatrical exhibitions generally. An interesting discussion may be found in *Mutual Film Corp. v. Industrial Com. of Ohio*, 236 U. S. 230. Generally speaking, a drama is "a theatrical exhibition" wherein the actors speak their several parts, in addition to the settings of scenery, the costumes, and acting which give to the whole a living presentation of the thing portrayed. An opera is "a theatrical exhibition" wherein the scenery and costumes are the same as in a drama, but the words are sung by the actors to the accompaniment of music, instead of being spoken. The moving picture show is likewise a "theatrical exhibition," in which the scenery, the costumes, and the action are all present. The spoken words are in pantomime, and frequently conveyed to the spectators by descriptive titles, or by dialogue thrown upon the screen. The moving picture has not inaptly been called "the silent drama." It is a well known fact that, under the growing popularity of exhibitions of this character in recent years, many actors who have won fame in what is now called the "legitimate drama" have devoted their talents to the production of moving pictures. The same play has been produced by the same actors by both methods. In one there is the scenery, the costumes, the actors, and the spoken words; in the other there are the identical scenery, costumes, and actors, and the words are in pantomime, or are suggested by sentences displayed on the screen before the spectators. To hold that the first of these constitutes a "theatrical exhibition" and that the latter does not, would, we think, be doing violence to language, and would likewise be contrary to common sense.

In *Kalem Co. v. Harper Bros.*, 222 U. S. 55, the Supreme Court of the United States considered an appeal regarding an alleged infringement of the copyright of the book Ben Hur. The Kalem Company was engaged in the presentation of moving picture films. In this case, the court said:

"Action can tell a story, display all the most vivid relations between men, and depict every kind of human emotion, without the aid of a word. It would be impossible to deny the title of 'drama' to pantomime as played by masters of the art.

*Daly v. Palmer,* 6 .Blatchf. 256, 264. But if a pantomime of Ben Hur would be a dramatizing of Ben Hur, it would be none the less so that it was exhibited to the audience by reflection from a glass, and not by direct vision of the figures,—as sometimes has been done in order to produce ghostly or inexplicable effects. The· essence of the matter in the case last supposed is not the mechanism employed, but that we see the event or. story lived. The moving pictures are only less vivid than reflections from a mirror. With the former, as with the latter, our visual impres- sion—what we see—is caused by the real pantomime of real men through the medium of natural forces, although the machinery is different and more complex.''

Furthermore, our statute is very broad in its terms. It includes ''theaters, theatrical exhibitions, shows and exhibitions of *all* kinds.'' It is amply broad to include a moving picture show. If authorities are needed to sustain our conclusion, they are not wanting.

In *Ex parte Lingenfelter,* 64 Tex. Crim. 30 (142 S. W. 555), the statute prohibited the opening of any place of public amuse- ment on Sunday, and provided that ''the term place of public amusement, shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged.'' It was conceded that the picture show complained of in said cause was ''an ordinary moving picture show, without vaudeville or other attractions.'' The court recognized that the doctrine of *ejusdem generis* ap- plied in the construction of the statute, and that, construing the words ''such other amusements'' in said statute, it meant ''amusements of similar character and kind, or of the same species.'' The court enters into a discussion of what constitutes a theater and what are theatrical shows, and holds that the words ''such other amusements'' included moving picture shows. The court said:

''It is a question of fact, not of law, whether a moving pic- ture show is of the same species and of similar character and kind of amusement as a theater, and if it is not of this species of amusement, we do not understand that term. It is but the presentation of plays and scenes from real life; the theater is nothing more or less. The moving picture show presents comedy

and tragedy, as do the theaters. It calls forth the same emo-
tions from the patrons as do the theaters, to a greater or less
extent. In fact, it is an exhibition of the same character and
kind on canvas, without spoken words. To hold otherwise would
be for us to nullify and render meaningless the words 'and such
other amusements,' and this we are no more authorized to do
than we are authorized to enact laws.''

In *Power v. Nordstrom,* 184 N. W. 967, the Supreme Court
of Minnesota had before them a similar question. The statutes
of that state grant power to village councils to adopt such or-
dinances as they deem expedient for the preventing, licensing,
or regulating of circuses, theatrical performances, or shows of
any kind. In pursuance of said statute, the village council of
North Branch adopted an ordinance prohibiting and forbidding
moving picture shows on Sunday. The Supreme Court said:

''No question is or could be raised about the meaning of
the word 'shows,' as used in the statute. Clearly enough, it is
sufficiently broad to include exhibitions of moving pictures. 38
Cyc. 258. It must be conceded that the motion picture business
is a lawful business. Nevertheless, it is a business which is sub-
ject to regulation by the state by virtue of its police power, and
by the political subdivisions of the state to which the power has
been delegated by the legislature.''

In *State v. Morris,* 1 Boyce (24 Del.) 330 (76 Atl. 479), it
was held that the business of a moving picture show comes with-
in the meaning of the term ''theatrical performance.''

We deem it unnecessary to continue the discussion. We
hold that Section 703 is sufficiently broad to delegate to cities
and towns the power to regulate moving picture shows within
such municipalities.

III. It is insisted that the ordinance in question is in-
consistent with the laws of the state, and therefore void. It will
be observed that, under Section 680, municipal corporations

2. MUNICIPAL
CORPORATIONS:
ordinances: va-
lidity: incon-
sistency with
state statutes.

have power ''to make and publish, from time to
time, ordinances not inconsistent with the laws
of the state.'' This is in the section defining
the general powers of municipal corporations.
Code Section 5040 is the general statute of the state providing
a penalty for breach of the Sabbath. It provides as follows:

"If any person be found on the first day of the week, commonly called Sunday, engaged in carrying firearms, dancing, hunting, shooting, horse racing, or in any manner disturbing a worshiping assembly or private family, or in buying or selling property of any kind, or in any labor except that of necessity or charity, he shall be fined not more than five nor less than one dollar, and be imprisoned in the county jail until the fine, with costs of prosecution, shall be paid."

It is contended by appellant that Ordinance No. 330 merely provides a penalty for a breach of the Sabbath. It is contended that the ordinance is inconsistent with said Section 5040. The state law, it will be observed, provides that the penalty for a breach of the Sabbath shall be a fine of not more than five nor less than one dollar, and imprisonment in the county jail until the fine and costs are paid. The ordinance in question provides for a fine not exceeding $100, or imprisonment not exceeding thirty days. It is the contention of the appellant that the legislature, having enacted this general statute in regard to Sunday observance, has declared the policy of the state, and has fixed the penalty for violation of said statute; and that, the legislature having so spoken on the general subject-matter, the city cannot by ordinance impose a different penalty than that provided by the state statute for what is, in effect, the same offense.

As we view it, Ordinance No. 330 is in no way inconsistent with the general statute, Section 5040. It does not attempt or pretend to legislate on the general subject-matter of Sunday observance. Code Section 5040 prohibits the things therein enumerated, such as carrying firearms, dancing, hunting, etc., the buying or selling of property, and also any labor except that of necessity or charity on Sunday. There is no inconsistency between this general statute pertaining to Sunday observance and the ordinance in question, regulating the conduct of a specific business, like a moving picture show. Whether or not one who labors on Sunday in connection with the operation of a moving picture show might be liable for a violation of the general statute pertaining to Sunday observance, is not before us, and upon that question we express no opinion; but we are very clear upon the proposition that the ordinance in question, pertaining to the regulation of a business regarding which power

has been specifically conferred upon the municipality by the legislature, is not inconsistent with the general statute of the state respecting Sunday observance.

IV.   It is urged that Section 703 of the statute is unconstitutional, in conferring upon cities and towns the power to *prohibit* circuses, theatrical exhibitions, and shows.   Section 1 of the Bill of Rights of our Constitution is as follows:

3. STATUTES: unconstitutional in part: effect.

"All men are, by nature, free and equal, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety and happiness."

Section 6 is as follows:

"All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities which upon the same terms shall not equally belong to all citizens."

It is contended that Section 703 of the Code is in contravention of said provisions of the Constitution, and also of the Fourteenth Amendment to the Constitution of the United States, and that the same abridges the privileges and immunities of the appellant, and deprives him of his liberty and property without due process of law, and denies to him the equal protection of the law.

The particular point made is that the moving picture business is a legitimate industry, and that the legislature has no power by statute to confer upon municipalities the power to "prohibit" such business.   It will be observed that the statute delegates to municipalities the power to license, regulate, or prohibit certain things.   It is unnecessary for us to determine whether the statute is unconstitutional in conferring upon municipalities the power to "prohibit" a business that, in and of itself, is legitimate and unobjectionable.   The statute confers upon municipalities the power to enact ordinances in respect to certain specified businesses, and in regard to said specified businesses the municipalities are clothed with authority to act in three ways.   They may (1) license, (2) regulate, or (3) prohibit.   The ordinance in question makes no attempt to prohibit

the business of conducting a moving picture show. Whether or not, in so far as the statute delegates the right to prohibit, it is unconstitutional, is a question which we do not determine. It is a well established rule that a statute may be unconstitutional in one respect and valid and enforcible in another. 36 Cyc. 976, and numerous cases cited, including *McCready v. Sexton & Son,* 29 Iowa 356; *Santo v. State,* 2 Iowa 165; *City of Keokuk v. Keokuk Northern Line Packet Co.,* 45 Iowa 196; *Davenport Gas & Elec. Co. v. City of Davenport,* 124 Iowa 22; *State v. Santee,* 111 Iowa 1; *Hubbell v. Higgins,* 148 Iowa 36.

In the instant case, the city, by the enactment of this ordinance, did not seek to either license or prohibit moving picture shows within the city. The city sought to *regulate* the business. The statute conferring the power to *regulate* a business of this character does not violate the terms and provisions of either the state or the Federal Constitution. The power to license, regulate, or even prohibit moving picture shows has been held, in numerous jurisdictions where the question has been raised, to be a proper exercise of the police power. The legislature is primarily vested, under the Constitution, with such power, and may, under certain restrictions, delegate said power to municipal corporations. That a moving picture show comes within the purview of the police power is generally recognized. *Mutual Film Corp. v. Industrial Com. of Ohio,* supra; *Mutual Film Corp. v. Hodges,* 236 U. S. 248; *Jewel Theater Co. v. State Fire Marshal,* 178 Mich. 399 (144 N. W. 835); *Block v. City of Chicago,* 239 Ill. 251 (87 N. E. 1011); *Nahser v. City of Chicago,* 271 Ill. 288 (111 N. E. 119, L. R. A. 1916 D, 95); *State v. Loden,* 117 Md. 373 (Ann. Cas. 1913 E, 1300, and note); *Higgins v. La Croix,* 119 Minn. 145 (137 N. W. 417); *Dreyfus v. City of Montgomery,* 4 Ala. App. 270 (58 So. 730); *Oldknow v. City of Atlanta,* 9 Ga. App. 594 (71 S. E. 1015).

Upon this branch of the case, we hold that Section 703 is not unconstitutional in so far as it delegates to the municipality the power to enact the ordinance in question.

V. It is contended that, in any event, the ordinance is unreasonable, and should be held void because thereof. As we have indicated, the legislature has conferred on municipal corporations the power to "regulate" moving picture shows. This being

true, is the particular ordinance in question an unreasonable regulation? The city council cannot act arbitrarily in the matter, even though the power to regulate is delegated, and even though the regulation pertains to the police power. But, under its power to regulate, there are undoubted numerous requirements that may be lawfully prescribed by the city council, pertaining to the manner in which the business is conducted. A few illustrative cases may be of assistance.

In *City of St. Louis v. Nash*, 266 Mo. 523 (181 S. W. 1145), it was held that a moving picture building properly came within a regulation as to fire limits.

In *Jewel Theater Co. v. State Fire Marshal*, supra, the court sustained a statute prohibiting moving picture exhibitions in any building not having its audience room at the street level.

In *Nahser v. City of Chicago*, supra, an ordinance prohibiting the location of a moving picture show within 200 feet of any church was sustained as valid.

Under the granted power, the legislature could undoubtedly enact numerous provisions regarding the manner of conducting moving picture shows. The council could unquestionably pass an ordinance regarding the entrances and exits, fire escapes, ventilation, and other similar matters pertaining to such places which come within reasonable police regulations. If the municipality has the power to enact ordinances of the character above indicated, no good reason can be given why it may not likewise pass an ordinance reasonably regulating the periods of time when a moving picture theater may be open.

It must be remembered that the city council has a right to take into consideration the fact that large numbers of people attend such shows. Laying aside all consideration of any moral question involved in Sabbath observance, it is a fact that in every community in the land there is more or less of a cessation of labor on Sunday. The fact that people generally are at liberty from their usual occupations on that day easily makes possible the gathering of crowds at such places of amusement on Sunday. This of necessity may require additional police protection, which must be furnished by the city. This fact alone might be sufficient warrant for holding such a regulatory ordinance to be reasonable. Furthermore, the city council has a

right to recognize the obvious fact that great numbers of our citizens devote this day to rest and worship, and to some degree of quietude.  The city council also has a right, perhaps a duty, to reasonably protect such citizens against the disturbance incident to the gathering of crowds upon the streets in and about places of public amusement.  Under the statute in question, the city council has the same power to regulate circuses that it has to regulate moving picture shows.  Would it be regarded as unreasonable for the city council of Ames to provide, by regulatory ordinance, that a circus should not exhibit in said city on Sunday?  Such an ordinance would, we think, be regarded as reasonable, without regard to any moral question involved.  The circus might be a ''moral show,'' not only according to its flamboyant advertisements, but in fact as well.  The same reasons,— the gathering of crowds, the necessity of police protection, the disturbance of the quiet of other members of the community,— that furnish a valid reason for the regulation of circuses, operate, in a lessened degree undoubtedly, but in the same general manner, to justify the regulation of moving picture shows on Sunday.  It is a matter peculiarly within the discretion of the city council.  We cannot, and we should not, hold the ordinance to be unreasonable, unless it is plainly and palpably so.  We do not so regard it, and cannot hold it to be invalid as unreasonable.

Much is said in this connection about the unreasonableness of all Sunday laws and ordinances in these modern and more enlightened days of freedom of thought and action and of religious liberty.  We have been entertained and enlightened by an illuminating discussion of ''theocracy'' and the right of every citizen of this republic to worship according to the dictates of his own conscience.  It is unnecessary that we discuss in this opinion the propriety of the enactment of the statutes prohibiting a breach of the Sabbath.  This is a Christian nation.  The observance of Sunday is one of our established customs.  It has come down to us from the same Decalogue that prohibited murder, adultery, perjury, and theft.  It is more ancient than our common law or our form of government.  It is recognized by Constitutions and legislative enactments, both state and Federal.  On this day, legislatures adjourn, courts cease to function, business is suspended, and nation wide, our citizens cease

from labor. The observance of the Sabbath is regarded as essential to the proper upbuilding of the mental and physical, as well as the moral, life of a great people. Laws and ordinances respecting its observance are clearly within the genius of our institutions and the spirit of our national life. The ordinance in question is not inconsistent with the laws of the state, nor is it an unreasonable regulation. It is, therefore, valid.

VI. It is argued that there is a distinction to be made between the case where an admission fee was charged and the one that was free, except for the voluntary contributions of the patrons.

The ordinance in question was violated in each instance. It is the operation of the show that the ordinance is leveled against. The appellant was equally guilty in each case. *McLeod v. State*, 77 Tex. Cr. Rep. 365 (180 S. W. 117).

Since we find no error in the record, it is ordered that the judgment of the district court be—*Affirmed*.

All the justices concur.