## J. J. HEGMAN V. THE STATE.

No. 5619.   Decided first in December 1920 and finally February 23 1921.

#### 1.—Sunday Law—Moving Picture—Requested Charge.

Where, upon trial of a violation of Article 302, Penal Code, the evidence showed that defendant kept his said place open, charged an admission fee, and had a large crowd of people present in his picture show, and that the reel shown on said day was a series of pictures entitled "Under Four Flags," which was gotten up under Government sanction, there was no error in refusing a requested charge telling the jury that before they could find the defendant guilty that they must not only find that he kept open his place of amusement on Sunday, and charged an admission fee therefor, but that such amusement was either a circus, a theater, or a variety theater, or was of the same kind or nature as a circus, theater, or variety theater.

#### 2.—Same—Ejusdem Generis—Statutes Construed—Dramatic Representation.

While the court does not care to go into an extended analysis or discussion of the actual similarity between theaters, circuses, dramas, picture shows, etc., nor of any extended application of the rule of *ejusdem generis,* as this has already been done exhaustively, it cites by way of analogy. Sub-Division 13, Article 7355, Civil Statutes, which classes all theaters and dramatic representations together for purposes of taxation.

#### 3.—Same—Question of Law and Question of Fact—Requested Charge.

Where, defendant sought by his special charge to have it left to the jury as to whether or not the instant case, upon the practically agreed facts, was of like kind or class with a theater or circus when this was a question of law for the court, it was therefore no error in refusing the requested charge.   Following Capital Theater Company v. Commonwealth, 100 S. W. Rep., 1076, and other cases.

#### 4.—Same—Precedent—Former Decision—Moving Picture.

In the case of Ex Parte Lingenfelter, 64 Texas Crim. Rep., 30, and other cases, this court passed affirmatively upon the question as to whether a moving picture show exhibiting on Sunday for an admission fee, pictures of the life of Christ—was of the same kind and class as a theater, and held that it was in violation of Art. 302, Penal Code.   Following Zucarro v. State, 81 Texas Crim. Rep., 1, and other cases.

#### 5.—Same—Statutes Construed—Ejusdem Generis—Question of Law.

The question of *Ejusdem Generis* is one for the court and not for the jury, and an attempt at re-production by moving pictures or live actors of the acts and deeds of other persons and things, for which an admission fee is charged, is of the class, kind, and species forbidden by Article 302, Penal Code.   Therefore, the trial court did not err in refusing to give defendant's requested charge.   Davidson, Presiding Judge, dissenting.   Besides, the requested charge contained no definition of a theater, etc.

#### 6.—Same—Legislative Construction—Statutes Construed.

Article 1480, Vernon's Penal Code, may well be looked to as indicative of the legislative intent and purpose in the use of the term and expression

about which so much has been said in this connection. It is declared in the caption of said article that part of the purpose of said act (Regular Session, 1907) is to declare theaters, playhouses, opera houses, and other show buildings by whatever name known to be public places of amusement, and is so enacted in Section I of said statute, which is a later enactment than Article 302, Penal Code. Davidson, Presiding Judge, dissenting.

#### 7.—Same—Sunday Law—Theater—Question of Law.

A moving picture show is a place where the drama is displayed and is a species of theater coming within our Sunday law statute, and whether the exhibition given is one prohibited under the statute is a question of law and whether it was exhibited on Sunday, for an admission fee, etc., is a question of fact. The moving picture show is in actual fact a scenic representation, and this is a theatrical entertainment or performance. Following Myers v. State, 5 Ohio App. Rep., 158, and other cases. Davidson, Presiding Judge, dissenting.

#### 8.—Same—Sunday Law—Statutes Construed—Picture Show—Amusement.

That, to be an amusement, the picture depicted must only excite pleasurable emotions is to minimize the acting of the great dramatic artists, not only upon the speaking stage but before the camera, whose portrayal of the sorrows and tragedies of life have moved thousands to tears.

#### 9.—Same—Tragedy—Melodrama—Comedy—Picture Show—Theater.

A person could be held for a violation of Article 302, P. C., under a charge of operating a theater on Sunday whether the performance was a tragedy, melodrama, or comedy, and one would likewise be guilty who operated a moving picture show on Sunday, whether the screen depicted tragedy, melodrama, or comedy, and moving pictures are embraced in Article 302, although the same was passed thirty-four years. ago.

Appeal from the County Court of Travis. Tried below before the Honorable D. J. Pickle.

Appeal from a conviction of a violation of the Sunday law; penalty, a fine of $25.00.

The opinion states the case.

*McGregor, Burr & Lewis,* and *Shelton & Sheldton,* and *A. L. Love,* for appellant.—Cited Ex Parte Muckenfuss, 107 S. W. Rep., 1131; Ex Parte Roquemore, 131 S. W. Rep., 1101; Ex Parte Lingenfelter, 142 S. W. Rep., 555; Zucarro v. State, 197 S. W. Rep., 982.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, JUDGE.—Appellant was convicted of keeping open a moving picture show on Sunday, and given a fine of $20.

From the record we gather that appellant was the proprietor, owner, and operator of the Queen Moving Picture Show, in Austin, the same being a regularly licensed moving picture show.

On the day mentioned in the complaint, appellant kept said place open, charged an admission fee, and seems to have had a large crowd

of people present. The reel shown on said day was a series of pictures entitled "Under Four Flags," and it appeared to be a part of the publicity work of the committee headed by Mr. George Creel. Appellant claimed that his show was not of the kind or class forbidden by Article 302 of our Penal Code; and asserted that it was a question of fact that should be submitted to the jury, and to this end asked the following special charge:

"You are instructed gentlemen of the jury that not every amusement which is exhibited and to which an admission fee is charged on Sunday is a violation of the law but only such as are forbidden by law, and an amusement which is exhibited and to which an admission fee is charged on Sunday and which is not a circus, a theatre nor a variety theatre, or is not of the same kind, character or nature or genus as a circus, theatre, or a variety theatre is not against the law. You are therefore instructed that before you can find the defendant guilty in this case, you must not only find that he kept open a place of amusement on Sunday and charged an admision fee thereto but you must further find from the evidence that such amusement was either a circus, a theatre, or a variety theatre or was of the same kind, character or nature as a circus, theatre or variety theatre, and unless you do so find, you will acquit the defendant."

There is nothing in the record to indicate that the show of appellant was in any wise different from the other regularly licensed and operated moving picture shows, nor to combat the proposition that its continual business was to amuse, instruct and entertain the public, for a consideration by the exhibition of all kinds and characters of moving pictures nor do we think that the fact that on this particular day, in a probable effort to evade the operation of the Sunday Law, said picture show was operated only to show scenes and incidents connected with the war, would take it out of the inhibition of Article 302 of our Penal Code.

Impersonation of the acts of another, or others, however realistic or true to life, is but drama, which is defined to be something intended to exhibit episodes of human life, to depict a series of grave or humorous action of more than ordinary interest, tending toward some striking result. It is commonly designed to be spoken and represented by actors on the stage. The principal divisions are tragedy and comedy. That the original of the thing attempted to be reproduced, was a real occurrence,—whether a tragedy, as of a war between nations, a combat between individuals,—or a comedy in actual life,—would not change the fact that its reproduction would be a play, or drama. If General Pershing, with a company of ex-service men who had braved the perils of the Meuse and Argonne Forest, should present in *propria persona,* and by word and deed, a reproduction of the thrilling occurrences of those days, in a tent, house, or enclosure, for a consideration, this would be but acting,—but a drama.

It is well known, as a part of the current history of the times, that Col. Wm. F. Cody, brave soldier and scout, for years carried from end to end of this country, a group of genuine cowboys, outlaw horses, real Indians, actual battle-scarred stage coaches, and presented realistic reproductions of occurrences of the earlier days of our country's history, and yet, in the opinion of our lawmakers, his exhibition was so like, or similar to a circus, that they linked the two together in Subdivision 14, of Article 7355 of our Civil Statutes, and exact the same license fee "from every circus or wild-west show." In subdivision 13 of the same Article, all theatres and dramatic representations, are classed together for purposes of taxation. We do not care to go into an extended analysis or discussion of the actual similarity between theatres, circuses, dramas, picture shows, etc., nor of any extended application of the rule of *ejusdem generis* to these various things which we have mentioned as being of like kind and class to theatres and circuses, for this has already been ably and exhaustively done by this Court in other cases similar to the one before us.

Appellant sought by his special charge, to have it left to the jury as to whether or not the instant case, upon the practically agreed facts, was of like kind or class with a theatre or circus. We do not think this a jury question, nor has it been so considered by any of the courts with whose opinions we are familiar. In the recent case of Capital Theatre Co. v. Commonwealth, 199 S. W. Rep., 1076, it was sought to have the labor in operating a moving picture show on Sunday, held a necessity, under a statute exempting works of charity and works of necessity on Sunday. In its opinion, the appellate court of Kentucky, uses the following significant language: "The authorities also agree that the question whether the work complained of as having been done on the Sabbath, is a work of necessity or charity,—the facts being established, or as in this case, agreed,—is one of law for the court." In the Roquemore case, 60 Texas Crim. Rep., 282; 131 S. W. Rep., 1101, cited and relied on by appellant, we held that the question as to whether the exhibition of a baseball game on Sunday, for which an admission fee was charged, was of the same kind or class as a theatre,—was one for the court, and this Court decided that it was not of such kind, class, or species. In the Lingenfelter case, 64 Texas Crim. Rep., 30, 142 S. W. Rep., 555, this Court passed affirmatively upon the question as to whether a moving picture show, exhibiting on Sunday for an admission fee, pictures of the life of Christ,—was of the same kind and class as a theatre, and we held the same to be such and a violation of Article 302 of our Penal Code. For similar holdings, see Zucarro v. State, 82 Texas Crim. Rep. 1, 197 S. W. Rep., 982; Ex parte Zucarro, 72 Texas Crim. Rep., 214, 162 S. W. Rep., 844; Lempke v. State, 76 Texas Crim. Rep., 125, 171 S. W. Rep., 217; McLeod v. State, 77 Texas Crim. Rep., 365; 180 S. W. Rep., 117; Spooner v. State, 79 Texas Crim. Rep., 44, 182 S. W. Rep., 1121.

In Ex parte Muckenfuss, 52 Texas Crim. Rep., 467; 107 S. W. Rep., 1131, Judge Ramsey, for this Court, ordered the relator discharged, upon the judicial determination by us that the offense for which he was held was not, under the facts, of the same genus, kind, and class as those offenses, to prevent which an injunction would lie. In Humphrey v. State, 34 Texas Crim. Rep., 434, we substantially held that it was not proper to submit to the jury a special instruction to acquit, unless the tables and dominoes used were kept specially for gaming purposes. We uphold the judicial determination of the courts that it is not proper to submit to the jury the question of whether whiskey is intoxicating. When murder is charged to have been committed with a gun, and shown to have been done with a pistol, we do not submit to the jury the question of whether *ejusdem generis* would apply. Nor when the allegation is of theft of a horse, do we require the submission of the question to the jury as to whether a mare, a gelding, or a colt is of the same kind, class, and species as a horse. Similar illustrations might be multiplied *ad infinitum*. In Graham v. State, 183 S. W. Rep., 983, the Supreme Court of Tennessee upheld the action of a trial court in judicially determining that a moving picture show was such kind and class of business as to make it violative of a statute forbidding the doing on Sunday of the common avocations of life. In State v. Morris, 76 Atl., 479, an appellate court in Delaware judicially determined that a moving picture show was of such kind and class as to make it a violation of a statute which forbade exhibiting circuses without licenses. In Clinton v. Wilson, 257 Ill. 580, the appellate court judicially determined that a picture show was not *ejusdem generis* with a billiard room, baseball ground, ball or pin alley; and held that a moving picture show was not within the inhibition of a law forbidding such named places, or other such places of amusement, to run on Sunday.

In the instant case, there was practically no contest over the facts. Appellant testified that he was the owner, operator, and proprietor of the Queen Moving Picture Show, which was a regularly licensed picture show, which he says was run on said Sunday, just as it was run on other days. Speaking in one place of his license, he said that he did not have it; that it was framed, on the wall of the theatre. Appellant further testified that on the Sunday in question, the large crowd present to view the particular show in question, paid twenty cents each admission fee. Our conclusion is that the question of *ejusdem generis* is one for the court and not for the jury; and that an attempt at reproduction by moving pictures or live actors, of the acts and deeds of other persons and things, for which an admission fee is charged, is of the class, kind and species forbidden by Article 302 of our Penal Code, and that the trial court did not err in refusing to give the special charge requested.

In addition to the above, we call attention to the fact that the special charge under discussion contains no definition of a theatre, etc., and if it had been proper to submit to the jury the question whether a pic-

ture show was of like kind and character as a theatre, etc., such charge would be insufficient unless same in some way told the jury, or submitted to them, the nature and character of that which was used as a standard of comparison. The word "theatre" has definition in the works of the lexicographers, but we know of none in the laws of this State, except in Article 1480 of our Penal Code, which will be further discussed. In both Webster's International Dictionary, and the Century Dictionary, a theatre is defined as an edifice, or a room in which dramatic spectacles or performances may be exhibited to an assembly; the locality where a series of events take place, or may be observed; the drama; theatrical representations; the stage. We note that in the Zucarro case, *supra,* reference is made to Article 1480 of Vernon's Penal Code. This article was enacted in 1907, and while not having for its purpose Sabbath regulation, it is held in the Zucarro case not to be in conflict with Art. 302, P. C., under which this prosecution is had, and may well be looked to as indicative of the legislative intent and purpose in the use of the terms and expressions about which so much has been said in this connection. It is declared in the caption of said article 1480 (See page 21, Acts of the Regular Session, 1907) that part of the purpose of said Act is to declare theatres, play houses, opera houses, and other show buildings, by whatever name known, to be public places of amusement. It is enacted in Section 1 of said statute, that all buildings constructed, fitted, and equipped for theatrical purposes, which are commonly called theatres, opera houses, play houses, or designated by any other name, when used for public performances, the production and exhibition of plays, dramas, operas, and other shows of whatever nature, to which an admission fee is charged, are public houses of amusement. We take it that this is the last word in comprehensiveness. If by construction, fitting and equipment, a building be a theatre; or if same is commonly called a theatre, opera house, play house, or other designation, and same is used to give a play, a drama, an opera, or any other show to which an admission fee is charged, it is declared to be a public house of amusement. This is a later enactment than Article 302, and we think its unquestioned comprehension of picture shows in its definition of places of public amusement, is properly considered in construing said Article 302. While it is true that the legislative construction of a statute, or its definition of a similar term in any other statute, cannot control the judgment of the courts, yet it is entitled to weight and consideration in cases where there is doubt. Article 1480 is a declaratory statement of a definition by the Legislature, which plainly makes a house of public amusement include a picture show. Our conclusions on this subject hitherto and in other cases, have been largely based on deduction and reason, which are fortified and aided by reference to said last named article.

Having carefully examined this record, and the questions raised, and finding no error in the judgment of the trial court, the same will be affirmed.　　　　　　　　　　　　　　　　　　　　　*Affirmed.*

DAVIDSON, Presiding Judge, (dissenting).

MORROW, Judge, (concurring).—Appellant testified that he was the proprietor of the Queen Moving Picture Theater, in which moving pictures were displayed for profit, and that he had a license therefor; that on Sunday he kept his place of business open, charged the public an admission fee for entering and exhibited moving pictures. These pictures he describes as being a moving picture entitled "Under Four Flags," being one of a series of pictures designed to display incidents of the preparation and participation of the United States in the war with Germany. The pictures, he said, were prepared under the auspices of the government.

He requested the court to instruct the jury thus:

"Before you can find the defendant guilty in this case, you must not only find that he kept open a place of amusement on Sunday and charged an admission fee therefor, but you must further find from the evidence that such amusement was either a circus, a theater, or a variety theater, or was of the same kind or nature as a circus, theater, or variety theater; and unless you do so find, you will acquit the defendant."

The court refused this charge, and instructed the jury to determine whether the appellant was the proprietor of a moving picture theater, whether he kept his place of business open on Sunday for the purpose of amusement, and exhibited therein a moving picture show, charging an admission fee. These, I think, were the facts for the jury to determine. It is said in Bishop's New Criminal Procedure, vol. 2, sec. 908:

"In general terms, it is a question of law for the court to determine whether an alleged combination of acts and intent constitutes a crime, and the question of fact whether or not the defendant did the things and entertained the intent."

As construed by this court, the statute does not forbid the exhibition of a baseball game on Sunday to which an admission fee is charged (*Ex parte, Roquemore,* 60 Texas Crim. Rep., 282) ; that is, it does not include all amusements, but only such as those named in the statute and others like or similar thereto.

As commonly understood, a moving picture show is a place where the drama is displayed, and is a species of theater coming within our Sunday law statute. P. C. Art. 302; *Ex parte* Lingenfelter, 64 Texas Crim. Rep., 30; Zucarro v. State, 82 Texas Crim. Rep., 1. There were no controverted facts in this case. Whether the exhibition given was one prohibited under our statute, was a question of law, and whether it was exhibited on Sunday for an admission fee in appellant's moving picture theater, was a question of fact.

"The moving picture show is in actual fact a scenic representation, and by the very best authority a scenic representation is a theatrical entertainment or performance."

Myers v. State, 5 Ohio App. Rep., 158. The exhibition in question was a senic representation. It was designed and exhibited to entertain the public. It was displayed in appellant's place of business, designed and exclusively used for the exhibition of amusements in the form of moving pictures. At the present time, I think it may be safely said, that the greatest means of public amusement is the exhibition of moving pictures. It is true that moving pictures have other uses, some educational, some scientific. International Encyc., vol. 16, p. 378. In my opinion, it is not essential that a public amusement divert the audience. It suffices if it is designed to entertain them. Among other definitions, an amusement is defined as "a pastime, an entertainment," and the latter is defined "a mental enjoyment, instruction, or amusement afforded by anything seen or heard." Century Dictionary.

In the opinion of the writer, the trial court did not err in holding that under the facts the acts of the appellant constitute a violation of the Sunday law. I therefore concur in the result.

December 8, 1920.

DAVIDSON, PRESIDING JUDGE. (*dissenting.*)—Appellant was convicted under Article 302 P. C. for exhibiting a moving picture show performance on Sunday.

That statute has been before this court in several cases, notably Ex parte Lingenfelter, 64 Texas Crim. Rep., 30; Zucarro v. State, 82 Texas Crim. Rep., 1; also *Ex parte Roquemore,* 60 Texas Crim. Rep., 282. What I shall have to say will be mainly from the standpoint of majority opinions in the adjudicated cases cited. In the Roquemore case, an opinion by Judge Ramsey, it was held that a base ball game was not within the inhibition of Article 302 P. C., because not similar in nature and character to a theatrical performance, variety show or circus. That decision rested on the rule of *ejusdem generis.* All subsequent cases have been decided under that view of the law. It must, therefore, be a place of amusement or an "amusement" such as denounced by the statute under those cases. This necessarily involved a question of fact as to whether the exhibitions were of a similar nature to a theatre, variety show or circus. Zucarro v. State, *supra.* If that rule was not correctly applied, those decisions are bottomed on a wrong basis and are incorrect. If the facts do not bring the case within that rule, the exhibition is not within the term "such other amusements." Under the statute necessarily the picture exhibited must be one of "amusement." The language which forms the basis of such prosecution is as follows: ". . . or permit his place of business or place of amusement to be open for the purpose of traffic or public amusement on Sunday. . . . The term 'place of public amusement' shall be construed to mean circuses, theaters, variety theaters, and *such other amusements as are exhibited* and for which an admission fee is charged." The language "and such other amusements as

are exhibited and for which an admission fee is charged" gives character to and are descriptive of the places of "public amusement."

Therefore, under the decisions it becomes a question of fact as to whether the exhibition is one of "amusement." If so the decisions hold it must be one similar in character to those exhibited in theaters, variety shows and circuses. From any view point the exhibition must be one of "amusement." Moving pictures are not theaters, variety show or circus. It can only be pantomime. They are but imitations of the real thing sought to be exhibited. If the picture exhibited is not an imitation of either class, the State's case fails. In this case the State did not but refused to prove the character of exhibition, the picture thrown upon the screen. It devolves upon the State to bring the picture within the rule announced by the statute. It must be an "amusement." The defendant urged that the State must do so, and failing he was entitled to a verdict of not guilty. This was overruled. The State relied only upon the fact that the house was open, an exhibition had, and a fee for admission charged, without any evidence as to the character of the picture exhibited.

When the State closed its testimony appellant asked that the jury be instructed to find him not guilty. This charge was presented and refused. The charge should have been given. *Ex parte* Lingenfelter, 64 Texas Crim. Rep., 30; Zucarro v. State, 81 Texas Crim. Rep., 1, and Roquemore case, 60 Texas Crim. Rep., 252. There are other cases. Appellant then proved as far as permitted by the court what the picture was and its characteristics. He had written out a full description of the picture exhibited. This was offered by appellant, but the court refused to permit him to adduce it in evidence. He was permitted, however, to give orally a description of the pictures exhibited. Exception was reserved. The writer is of opinion that this should have gone to the jury as it would have conveyed to them a clearer and more accurate idea of the picture. Under the witness' testimony the picture exhibited was shown to be neither a theater, variety show nor a circus, nor an imitation of either. It bore no resemblance to either. An instructed verdict was then asked but refused. This the writer thinks should have been granted under the cases cited.

Appellant's testimony shows that when the United States entered the great world-wide war the government established a commission on public information, placing official photographers on the battle lines and on transports carrying soldiers from the United States to France and Europe; also at the munition factories, Red Cross work, the various victory loan drives and other things pertaining to the activities of that war. Mr. George Creel was made chairman of this commission. Members of this commission were Secretary of Navy, Secretary of War and Secretary of State, Mr. Daniels, Mr. Baker and Mr. Lansing respectively. There was a series of these pictures by command of the commission. These pictures were to be used as long as necessary for war and patriotic purposes. The first picture was entitled "Per-

shings Crusaders." It was exhibited by appellant in his place of business in Austin. The picture showed various army camps where soldiers were being trained, getting supplies, shoes, clothing and kindred matters of preparation to put our boys in readiness for service.

The next picture in the series was entitled "America's Answer." It showed docks built in France by America and progress in such building at the time that picture was taken and used.

Another picture was entitled "Under Four Flags." This was the particular picture on exhibition on the Sunday appellant was arrested, and which exhibition forms the basis of this conviction. The testimony in regard to this picture "Under Four Flags" is about as follows: It showed the transporting of soldiers across the ocean to Europe, such as convoys, smoke screens, use of depth bombs, the sinking of a German submarine; it showed actions along the battle front in the actual activities of battle, the aviation movements and fights in the air, the bringing down of German airplanes; it showed the victors and vanquished, meeting of allied generals at Versailles, the selection and appointment of General Foch as supreme commander, the conferences between the commanding generals of the great armies engaged in the war; it showed tanks in action, in actual battle; it showed armies in actual battle, the American boys going over the top; it showed the big guns in action of all the allies, American, French and Italian. It showed wounded soldiers at the battle front of the allied forces all along that terrific battle line strife; the workings of the Red Cross, and the ambulance and ambulance corps. It showed the actual occurring scenes taken at the battle front; it showed the Red Cross in action and the Salvation Army engaged in taking care of the wounded and feeding the hungry, and their attention to the American boys in their mission of mercy. It showed the Y. M. C. A. huts; it showed the victorious advance of the allied armies as they swept through the German fortifications, across their trenches and over the top. It showed French refugees, men, women and children seeking refuge and safety behind the allied lines. It showed the battle of Chateau Thierry from photographs taken on the ground. It showed the battle scenes on the Italian front as they actually occurred. It portrayed only actual occurrences as they took place, exhibiting all the horrors of millions of men engaged along the greatest battle lines in the world's history, with all its gruesome destruction, death and desolation. These pictures were taken by the official photographers not only of the United States but the four nations constituting the allied armies. These were exhibitions of actual battles of war. It was not the stage action of plays or imitation of theatrical playing, nor exhibitions of vaudeville or variety shows or theaters, nor the display and movements and clown actions of a circus. It showed pictures officially ordered, endorsed and exhibited to arouse our national life to the emergencies of the great death struggle in which our country was engaged to preserve our republican form of government. The country was in the stress of war

which involved its life and its government, and these pictures were exhibited all over our country by the authority if not by the command of the government, as a war measure. It cannot be said that these high officials would order all this as an "amusement." The movement and exhibitions were for another and different purpose. There was behind it the highest possible patriotic emotions and motives for the purpose of bringing before our people more clearly incidents of that terrific war struggle, and to awaken stronger interest by portraying to them visibly on the screens the tragic events along the battle lines, and a realization of the fearful ordeals through which their relatives, sons, brothers, husbands and friends were passing. It was an official appeal to patriotic Americans. "Under Four Flags" was not a theatrical play, a variety vaudeville exhibition nor was it a circus performance. It was the exhibition of scenes of battle, death and desolation. It would be worse than vain and more than useless to undertake to impress the mother who had given her son, and the wife her husband, and the sister her brother, to fall at Chateau Thierry, to die at St. Michel, or fill a soldier's grave in the Argonne Forest, with the idea that the portrayal of such tragedies and death scenes from German shot and shells constituted "a place of amusement." It would be impossible to conceive anything more obnoxious to any conception of amusement than such gruesome exhibitions. It is abhorent to any sense of humor to call such exhibitions "amusements." The writer is of opinion that this picture can not be brought within the Lingenfelter case and that line of cases. The facts do not so disclose but disprove. The question of morals from the standpoint of public power is not involved and can not be. Under Article 1509 P. C., immoral pictures can not be exhibited anywhere at any time, Sunday or other day of the week. They are forbidden and cannot be exhibited under any character of regulation, whether it be on Sunday or Monday. The writer is of opinion that Articles 1480, 1481, 1482 and 1483 can not aid in supporting this conviction. Those articles are intended to regulate exhibitions in places of amusement and houses or places where the exhibitions occur. They have the same reference to Sunday exhibitions as to those on other days of the week. If it be held to impair Article 302 and change its terms, then to that extent the conflict would repeal Article 302, because of their later enactment. If in those places exhibitions could occur on Sunday, these articles would regulate their exhibition as prescribed therein. If they repeal Article 302 and thereby permit Sunday picture shows, this case, of course, should be reversed, because under that view those articles would justify the exhibitions on Sunday, subject to specified regulations.

There are other questions which I shall not discuss. I have said this much because I am of opinion that if the decisions heretofore announced are correct, this case does not come within their purview, and this conviction cannot be sustained by them. The court should have charged an acquittal, or should have given the charge asked by appel-

lant. These matters are properly urged and presented to the trial court. Under no decision yet rendered could this exhibition come within the statute, whether the rule of *ejusdem generis* be applied, or the place be held a "place of amusement" independent of the rule of *ejusdem generis*. The statute in either event can only apply when "amusements" are exhibited. This court is not authorized to include in the statute places or things other than those specified as "amusements." If the thing exhibited is not included in the term "amusements" it is not within the statute. It depends upon the facts, and it must be "clearly, I think, amusements of a like or similar character." Zucarro v. State, 82 Texas Crim. Rep., p. 4. The facts here do not bring the picture within the rule of "like or similar character" as theater, variety show or circus. As I understand Judge Lattimore's opinion it overrules all previous cases rendered since and inclusive of the Roquemore case, and announces the proposition that any place of public amusement where fees are charged is included in the statute, Article 302 P. C., without reference to the character of the exhibition.

I respectfully dissent from the decision.

ON REHEARING.

February 23, 1921.

HAWKINS, JUDGE.—This case has heretofore been affirmed, with the late lamented Judge Davidson dissenting. The dissenting judge has long been held in high regard by the bench and bar of Texas. His profound knowledge of the law, his vigor of expression, and lovable traits as a man have been regarded by none with more loyal esteem than the writer. This has caused me to make close inspection of the record and an examination of the statutes and authorities reviewed and discussed in both the affirming and dissenting opinions. The conclusion has been reached that the majority opinion reflects the correct interpretation of the law. Considerable has been said as to the character of the picture exhibited on the screen upon the occasion complained of. That to be an "amusement" the picture depicted must only excite pleasurable emotions is to minimize the acting of the great dramatic artists not only upon the speaking stage but before the camera whose portrayal of the sorrows and tragedies of life has moved thousands to tears. Pictures which divert, entertain, instruct, or excite mirth would be as truly "other amusements" under the statute as a play upon the stage accomplishing these ends would be a theatrical performance. A person could be held for a violation of Article 302 P. C., under a charge for operating a theater on Sunday whether the performance was a tragedy, melodrama or comedy. One would be likewise guilty who operated a moving picture show on Sunday whether

the screen depicted tragedy, melodrama or comedy. The picture in question portrayed some of the great tragedies of the war. The moving picture show of today is an evolution that perchance was not even dreamed of thirty-four years ago when Article 302 of the Penal Code was enacted, but the language of that article is broad enough to embrace them, and this court having so concluded, it is not within our province to except them from the operation of the law. Only the law-making body could do this if it saw proper.

The motion for rehearing is overruled.

*Overruled.*