JOHN QUEEN v. THE STATE.

No. 7113.    Decided December 20, 1922.

**1.—Lottery—Information—Motion to Quash—Chewing-gum Vending Machine.**

Where the information alleged that on or about the 8th day of April, 1922, in Milam County, Texas, one John Queen, did then and there establish a lottery, the same being then and there a machine and device for the distribution of chewing gum and trade checks by chance among those patronizing said scheme, the said scheme being described substantially as follows: then setting out a description of the chewing-gum vending machine, and its operation, a motion to quash was correctly overruled.

**2.—Same—Lottery—Distribution of Prizes.**

Any scheme for the distribution of prizes under the law of this State is a lottery, and it does not matter that in the drawing or distribution there are no blanks. Following Randle v. State, 42 Texas, 580, and other cases.

**3.—Same—Charge of Court—Lottery Machine.**

There was no error in the action of the trial court in instructing the jury that the machine described in the information was a lottery; and it is proper for the court to assume that the facts without dispute established that said machine was a lottery. Following Hegman v. State, 227 S. W. Rep., 954.

**4.—Same—Charge of Court—Intent.**

The guilt of one who is charged with the establishing of a lottery is not made to depend on the advice he may have received as to the innocent character of the device; nor on his own belief in the fact that it was not a violation of the law, and there was no error in refusing a charge on this phase of the case.

**5.—Same—Evidence—Bill of Exceptions—Personal Property.**

By proper bill of exceptions complaint is presented of the fact that witnesses were allowed to testify that they played at said machine, and to state what the result was, and what they got by their playing; because it showed that it was a disposal of personal property. This is untenable, for the statute makes it penal to establish a lottery or dispose of any estate, real or personal, by lottery. Distinguishing Howard v. State, 49 Texas Crim. Rep., 327, and the proof was necessary to demonstrate the operation of the lottery.

**6.—Same—Evidence—Good Faith.**

Where objections to testimony that a number of small boys came to play at said machine were sustained, and the refusal of charges presenting issues of good faith, there was no reversible error.

Appeal from the County Court of Milam. Tried below before the Honorable Jeff T. Kemp.

Appeal from a conviction of a violation of the lottery law; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, and *A. J. Lewis,* County Attorney, for the State.—On question of Lottery Statute.—Stearns v. State, 21 Texas Crim. App., 619; Riesin v. State, 44 Texas Crim. Rep., 413; Martin v. State, 171 S. W. Rep., 712; and cases cited in opinion.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court of Milam County of a violation of the lottery law, and his punishment fixed at a fine of $100.

There are two counts in the information. Responsive to appellant's motion to quash, the first count was held bad, and the case was tried under the second count which is as follows:

"On or about the 8th day of April, 1922, in Milam County, Texas, one John Queen did then and there establish a lottery, the same being then and there a scheme and device for the distribution of chewing gum and trade checks by chance among those patronizing said scheme. the said scheme being described substantially as follows: The said lottery being then and there known as a 'chewing gum vending machine.' The scheme being to deposit a nickel or five cent piece in the slot or receptacle of said machine, whereby the person so depositing said coin upon the operation of said machine, receives a package of chewing gum, whereupon the machine registers or indicates that upon the next succeeding play or deposit of a coin, the person so playing same will receive from said machine, nothing, or, he may receive an indicated number of 'trade checks' in any amount up to twenty and which said trade checks are each then and there of the value of five cents in trade

and can be so exchanged with the owner and controller of said machine and in his store and place of business where said lottery is established, for goods, wares and merchandise at said value of five cents, each; and further after the receipt by the player or person using said machine, of said trade checks, said trade checks, themselves, in lieu of said coin, can be played and operated in said machine, upon the chance to receive a greater number of said checks in return for the one so risked and played therein, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State."

It thus appears that there was a direct charge of establishing a lottery and also a description of the device or machine, the maintenance and establishment of which constituted said lottery. While this exact device seems not to have been considered by the courts of this State, others very similar have been and the identical machine is no stranger in the courts of some of our sister states. In Lytle v. State, 100 S. W. Rep., 1160, the device consisted of a machine which gave out no blanks to the player who deposited his nickels in the slot, but to a bit of music and the accompaniment in appearing and disappearing lights, red, blue, green and white, a check came forth from the machine entitling the player to five, ten, fifteen or twenty-five cents worth of merchandise in the store of the operator. A player at said machine was held guilty of betting at a gaming table and bank, and it was stated that the device was covered by statutes against the exhibiting of such games. Christopher v. State, 41 Texas Crim. Rep., 235; Donathan v. State, 43 Texas Crim. Rep., 427, and Meeks v. State, 74 S. W. Rep., 910, are cited in said opinion in support thereof. In People ex rel. v. Jenkins, 138 New York Supp. 449, it was held that a machine apparently identical with that described in the information and shown by the testimony to have been displayed by appellant in the instant case, was held a gambling device. The court said:

"The element of chance lies in the fact that upon the turning of the lever and the deposit of the gum and number of checks indicated there is further indication of how many trade checks, if any, may be obtained upon the dropping of the second nickel. The number of trade checks, however, which can be obtained upon the dropping of the second nickel is only indicated after the first nickel has been dropped and the lever turned. Thus, in addition to the gum and trade checks indicated as the certain receipts upon the dropping of the nickel, is given an option to obtain a package of gum and an uncertain number of trade checks upon the dropping of the second nickel. That this uncertain option has in it such an element of chance as constitutes gambling can hardly be questioned. In fact, this element of chance only gives to the machine its value; and that its use is within the direct prohibition of the statute seems clear."

Also in State v. Googin, 102 Atl. Rep., 970, the Supreme Court of

Maine held a machine identical to that described in this information and proof, to be a gambling device. In that opinion the court said:

"But respondent says the gum machine involves no element of chance; that each play of the machine is a completed transaction, and shows precisely what the player is to receive, and what the machine is to give; that there is no contract, express or implied, that the player shall have a second or third play to avail himself of the opportunity of obtaining the trade checks; that, this being so, there is no element of chance. But the fallacy of this contention is found in the assumption that the machine deals with the individual, whereas by its method of operation, of necessity, it deals with the public. It is an automatic device, the operation of which is planned in every detail before it is put in use. It is then placed in public places, to be automatically worked. It is the dumb agent of its owner, inviting the public to operate it as often and as many times as any one of the public may please. We find no limitation upon the right of the same person to operate over and over again. ' It is undoubtedly this unlimited right that allures the patronage that makes the operation of the machine profitable. If the player does not win the first time, he knows he can repeat till he does win. It is therefore quite apparent that it is the prize, and not the gum, that invites the public. Accordingly, while each play is a completed act, it may be only preliminary to the future play, by the same person, which will bring forth the coveted prize, the chance in this operation being, not in the visible play, which may show only a package of gum, but in the invisible play by which the machine may turn up a visible prize to be captured on the next play. If a play turns up no premium, neither party loses. If it does turn up a premium, then the machine loses on that particular play.

But it is said there is no loss to the machine in the end, and consequently no chance, because the machine has calculated the profits and losses beforehand, and set apart a certain part of the profits to be allowed its customers. True, but not to all customers alike. Some get something; some get nothing; some more; some less. In this lies the test of what this device means, and the theory upon which it is conceived and worked, namely, to induce customers to play the machine with the expectation of getting something for nothing—it matters not what customer is successful—in that it is perfectly obvious that one part of the public pays in money for what another part of the public gets in prizes. In other words, this machine is a device designed to play one part of the public against another part of the public, for the purpose of inducing the whole public to take the chance of gain, which in the end results in producing to its owner the predetermined profits.

It is also claimed that this device is in the nature of a profit-sharing enterprise, or similar in its purpose to the practice of department stores in offering premiums. The department store does not take profits from one part of its customers or employes with which to

pay premiums to another part. No one set of customers is predestined to pay an extra price for the purpose of contributing funds for the payment of awards. But the owner of this machine, in advance, takes money out of one part of the public and gives it to another part, whose winnings depend upon the chance, arranged in advance, of just when and just how much a certain play of the machine will produce to the player who is lucky enough to approach it at the moment of the predestined play. If he, then, draws 20 checks valued at five cents each, he wins, in addition to his gum, $1. Another may win 10 checks; another, 5; an inequality of value probably running through the whole list of prizes."

Ferguson v. State, 178 Ind., 569; Horner v. United States, 147 U. S., 499; State v. Woodman, 26 Montana, 348, and others might be cited.

Any scheme for the distribution of prizes, under the law of this State, seems to be held a lottery, and it does not matter that in the drawing or distribution there are no blanks. State v. Randle, 41 Texas, 292; Randle v. State, 42 Texas, 580; Holoman v. State, 2 Texas Crim. App., 610. A slot machine is a lottery. Prendergast v. State, 41 Texas Crim. Rep., 318. In our opinion the second count sufficiently charged an offense against the laws of this State, and we believe that proof of the facts alleged would sufficiently make out the guilt of the accused.

We do not think the trial court erred in instructing the jury that the machine described in the information was a lottery. In Hegman v. State, 88 Texas Crim. Rep., 548, 227 S. W. Rep., 954, we discussed at length, and settled adversely to the contention of appellant in the instant case, the proposition that the question as to whether an admitted state of facts made out a violation of the law, should be submitted to the jury. We think it proper for the court to have assumed that the facts without dispute established that said machine was a lottery and there only remained the necessity of submitting to the jury the question of its operation and establishment by appellant. It was shown without dispute that the machine was bought by appellant and displayed in his store and there operated; that by dropping a nickel in the slot a package of gum was invariably obtained; that also checks—metal discs of the trade value of five cents each—sometimes came with the gum, and that these checks by deposit in the slot would also operate said machine not so as to bring forth gum, but when operated by the use of checks the player only received other checks or nothing. When each play was made there appeared in a little window in said machine a correct statement of what would come forth at the next succeeding play. Sometimes it would appear that nothing would be forthcoming and at others that checks from two to twenty would be secured at the next play. This shows said machine to be in exact accord with those described in the cases above quoted and to be a lottery.

We do not think the court should have submitted to the jury the question as one of fact for them to decide and upon which might be made to depend the guilt of appellant, that his intent in the establishment and operation of said machine was not to violate the law. The guilt of one who is charged with establishing a lottery is not made to depend on the advice he may have received as to the innocent character of the device, nor on his own belief in the fact that it was not a violation of the law.

By proper bill of exceptions complaint is presented of the fact that witnesses were allowed to testify that they played at said machine and to state what the result was, and what they got by their playing. There is no brief on file for appellant but it appears that the objection to this testimony was that it showed the operation of a machine for the disposal of personal property, it being urged that such proof was not proper when the charge in the information was simply the establishment of a lottery. The statute makes it penal to establish a lottery, or dispose of any estate, real or personal, by lottery. Article 533 Vernon's P. C. The only decision known to us which might by any construction support appellant's contention is that of Howard v. State, 49 Texas Crim. Rep., 327, but when viewed in the light of the facts in that case it will be seen to be not in point. Said case was reversed for failure of the facts to show the accused to have any guilty connection with the establishment of the policy game, which constituted the alleged lottery; and it was held that evidence of transactions in the operation of said policy game which had no effect to show appellant's guilty connection therewith, was inadmissible. No such state of facts here appears. The lottery was a machine—a device, and connection with it was admitted on the part of appellant. It was also alleged in the information as will appear from an inspection thereof, supra, that the character of the machine was fully set out in the information. Proof of the method of its operation would seem necessary in order to demonstrate that it was in fact a lottery. That such proof carried with it the further fact that parties operating said machine received gum or gum and checks, would not affect the admissibility of such proof.

Appellant was asked while a witness, relative to the number of small boys who came to play at said machine and the length of time they would stay. Objection to the answers to these questions was sustained, and the error, if any, of such questions was thus so minimized as not to appear serious. Special charges presenting issues of good faith in various forms were properly refused by the trial court.

Being unable to agree that any contention of appellant presented reversible error, an affirmance is ordered.

*Affirmed.*