## MILLS v. BROWNING.
### No. 12662.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 18, 1933.

Wayne Somerville and W. E. Fitzgerald, both of Wichita Falls, for appellant.

L. V. Abernathy and O. E. Nelson, both of Wichita Falls, for appellee.

LATTIMORE, Justice.

This suit was filed by Leo Mills, appellant, against Perry Browning, sheriff of Wichita county, appellee, on the 16th day of May, 1931, to recover 10 automatic mint-vending machines which the plaintiff had seized and had condemned under articles 636 and 637, Rev. Criminal Statutes (Penal Code).

Appellee, Browning, answered by a general denial and a special plea, to the effect that each of the machines for which the plaintiff sued constituted a gambling device, and the same were being used for gambling purposes.

The evidence was submitted to a jury on special issues, in answer to which the jury found that the machines in question were the property of plaintiff, Mills, and that they were "gaming devices." Upon a verdict so returned, the court entered judgment that the machines and each of them were gaming devices, and that the same should be destroyed by the sheriff as provided by law, and from this judgment the plaintiff, Mills, has duly prosecuted this appeal.

Upon the seizing of such machines by the peace officers under article 636 of the Penal Code, a proceeding which may be in rem to determine whether same shall be destroyed is directed by article 637 of the Penal Code.

The right of a claimant to such machines is set out in article 638 of the Penal Code as follows: "Any person having interest in or entitled to possession of any property so seized shall have the right at any time before the destruction of such property, as in ordinary civil cases, to try the issue of whether or not such property is a gaming table, or bank or device or was used as equipment or paraphernalia of any gambling house and to recover the possession of the same. * * * "

■ The proceeding in rem (article 637, Penal Code) had been conducted and the machines ordered destroyed. An analysis of article 638 of the Penal Code shows that, if the machines are either (a) gaming devices, or (b) equipment or paraphernalia of any gambling house, they are to be destroyed. A gaming device may be (a) one which is made primarily and principally for gambling, e. g., a roulette wheel, and, this primary and principal purpose being established, no further proof of its actual use is required; or (b) it may be a device which is useful for service to law-abiding society, in which event the article itself must be shown to be actually used in gambling to constitute it condemnable. This, of course, does not attempt to limit the scope of the remainder of the article. These definitions are of long standing, and, since their announcement, the ingenuity of some types of our citizens has devoted itself to an effort to make the former which would to a

judge or jury appear to be the latter, and the law reports abound with the descriptions of them. Fortunately, machines such as in this case have already found their biographer. Queen v. State, 93 Tex. Cr. R. 173, 246 S. W. 384.

■ The jury have found the machines were gaming devices. We thus are not called to decide that these machines are gaming devices, but must not repudiate the verdict, unless there is no evidence to sustain it.

■ Let us examine this record, taking, as we must, the evidence most strongly favorable to the verdict. The state was entitled to make out its case by circumstantial evidence. The victim inserted a coin of 5 cents in the slot, pulled a lever, and received a varying number of tokens, some of them reciting thereon "good for 5¢ in merchandise"; others bearing no inscription. Each of these could be, if the victim desired, played back, into the machine in the hope of increasing the number of tokens in hand. He also could, when his coin was played, receive a 2-cent package of mints by turning a lever on the side, if there were mints in the machine (some of these machines did not have mints in them). True, appellant says he did not put those merchandise checks in the machine, and that the slug affair was only "to stimulate trade in the machines," but the jury had a right to disbelieve him and exercised its right. His machine at "The Smokehouse" contained such checks which were so redeemed. That machine is not one of these sought to be reclaimed in this suit.

Now let us look at appellant's case as he would have us believe it. He pictures grown men crowding up to these machines to spend their nickels playing them—no skill, no wisdom, no matching of wits, or strength, or knowledge, or dexterity—in order to give a person unknown to the victim 3 cents, even if he got his 2 cents in mints, and to get a handful of tokens which were utterly worthless to him and known by him so to be when he put his nickel in. He could only put them back into the machine and, if fortunate, receive more "tokens." He did not even receive mints on playing his tokens. Now mints, I imagine, would be pretty tiresome as a steady diet. Unless one had just consumed an unusual ration of onions, or garlic, or bootleg liquor, whence comes this sudden "stimulation of trade" for mints? The thing staggers credulity.

Not only that, but the machine can be doctored and changed by the owner, and this record shows that these machines had been so treated. Thus the owner sets the machine at the ratio he wants the victim to receive in slugs, and can thus regulate the profits the machine will make according to how "trade" subjects itself to "stimulation," or how much "come on" is necessary to keep the

trade "stimulated." The best use these machines have is to exemplify the truth of the Good Book which says, "A fool and his money are soon parted." It seems to the writer that these machines are essentially gaming devices, and that any other holding puts the civil appellate courts of Texas contrary to the criminal rules. Queen v. State, 93 Tex. Cr. R. 173, 246 S. W. 384; Chambers v. Bachtel (C. C. A.) 55 F.(2d) 851; Varden v. State (Tex. Civ. App.) 52 S.W.(2d) 378.

■ Now as to the evidence complained of: Appellee could defeat this suit if appellant had no interest in or right of possession to the machines. He contended that these machines did not belong to appellant, but instead to one Nigro, from whom appellant claimed he had purchased same by oral contract just prior to their seizure. Naturally, the direct evidence on this issue could be and was in the exclusive possession of appellant and Nigro, the latter of whom appellee showed to be interested in the fate of the machines and who was helping appellant in presenting his case. Appellee, therefore, was compelled again to resort to circumstantial evidence. His cross-examination in an effort to show by circumstances that Nigro controlled these machines and handled them in Dallas was permissible. Moreover, any error was harmless. The record shows that, when appellee asked the question: "How came you to quit operating them there in Dallas County?" objection to which question was overruled, the plaintiff answered: "The machines we operated in Dallas were being run on straight money and not gambling machines." No other objection is shown to have been made to the inquiry about Dallas county.

When asked where his other machines were, plaintiff's objection was overruled, and he answered that he was afraid to tell for fear the sheriff would seize them, and the court thereupon refused to require him to answer. Plainly there was no error as to appellant's case in this.

■ Mr. Somerville, counsel for appellant, took the stand and voluntarily testified to confidential communications between him and appellant tending to show that Mills was his client and that the machines belonged to appellant. Appellee therefore was entitled to cross-examine him to show that in fact Nigro had been defending the condemnation prior to this trial, and had paid Somerville his fee in this case before us; and that appellant had paid him the fee for representing Nigro. When he is Nigro's lawyer, he is not privileged from testifying that Mills paid his fee, and, when he is Mills' lawyer, he is not privileged from testifying that Nigro paid his fee; neither is a communication between attorney and client who makes the objection, and the ruling does not affect this appellant's rights as to his confidence in his lawyer. To state on the witness stand now what he declared in open court in the condemnation case, that he represented Nigro, is plainly not privileged. Moreover, all of this was highly important on the appellee's circumstantial case as to who owned these machines. It is also harmless, for the jury found that issue in favor of appellant.

Now as to the testimony of Lawrence Smith and Dr. Salmon. This plaintiff had 26 machines in Wichita Falls. Only 10 are involved in this suit. I think we can safely say that, as far as the appellant is concerned, they all stood presumptively in the same status as to being gambling devices. Appellant took the stand and testified to owning his 10 machines and where they were located. As to the other 15 (one having been condemned as actually being used for gambling and destroyed), he was most uncertain. He was asked about numerous locations. He could not be certain about any except the one already condemned. Now this is a civil case. Appellant has definite evidence as to whether these other machines, which were being actually used for gambling, were his or not, and is asked about it, but he does not produce that testimony. The sheriff has proved that one of appellant's machines was used for gambling; that the others were like it; that some of these machines in controversy had tokens in them asserting value for merchandise. It seems to me that this case is complete. The fact that such tokens were not redeemed adds nothing of guilt to the promise they carry on their face. The testimony of Smith and Salmon was harmless.

■ Neither is the sheriff to be criticized for not placing on the witness stand the merchants who permitted the machines to be operated in their stores. True, upon such testimony the merchant may have immunity from prosecution, but none the less, if the state's case is true, he confesses himself a criminal, escaping punishment by pointing out his co-criminal. It seems to me no presumption against the sheriff arises from the absence of such witnesses. On the contrary, if the operations of the machines are as innocent as appellant says, he can produce his partners, the merchants, on the stand to give them the opportunity to publicly declare the decency and good conduct of their stores. The criticism is just against appellant, if there be any.

For the reasons indicated, the judgment of the trial court is affirmed.

CONNER, Chief Justice.

I concur in the affirmance of the judgment in this case, on the ground that the evidence seems to be sufficient to support the jury's finding that the machines in question are gambling devices, as a matter of law. If so, as the trial court and my associates have concluded, the fact that irrelevant and inad-

missible evidence was admitted over the objection of appellant is harmless, and I therefore do not wish to be understood as passing upon the assignments of error complaining of the court's rulings in the admission of the evidence.