

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Andrew Patton
District Attorney
Dallas County
Dallas, Texas

Dear Sir:          Attention: Hon. Earl Street, Assistant

Opinion No. O-1789
Re: Whether a theatre program featuring the "Doctor I. Q." radio broadcast over a network is a violation of the lottery statutes of this State

        This will acknowledge receipt of your request for our opinion as to whether the "Doctor I. Q." radio program which is broadcast over a network each week is in violation of the lottery statutes of Texas.

        Permit us to express our appreciation for your complete fact statement and your brief which comply with the provisions of Article 4399, Revised Civil Statutes. We quote from portions of the brief submitted:

        "The Dr. I. Q. program is presented over the radio each week for a half hour period by a commercial sponsor. The program emanates from a motion picture theatre.

        "During an intermission between pictures, an announcer appears on the stage of the theatre. Speaking into a microphone he advises the radio and picture show audience that he has several assistants, each with a portable microphone, among the members of the audience. The

Honorable Andrew Patton, page 2

announcer requests one of his assistants to choose a member of the audience who is willing to answer a question about to be propounded. The announcer then propounds the question, advising the person chosen that if he can answer the question he will be paid a stated sum of money. In the event the correct answer is given, the money is there paid to the member of the audience who thus assisted in the work, and the assistant announcers pass on through the audience choosing other people with whom the process is repeated. In the event that the person chosen cannot answer the question, or gives the wrong answer, the assistant announcer, nevertheless, compensates him for his efforts by presenting him with a box of merchandise on behalf of the sponsor of the program.

"As an illustration of the questions actually propounded, some that have been used are:

"'Who won the 1939 National League pennant?'

"'Is it possible to make fresh water out of salt water?'

"'In 1914, in what nation was the city of Warsaw?'

"For the correct answer to the first question, $9.00 was paid; for the second question $5.00; and for the third question $8.00. In the event that any one of the questions was not answered correctly, the sponsors gave the person who had volunteered to try to answer the question a box of merchandise. There is no contest between the various members of the audience, since if the first person chosen does not properly answer the question, the announcer on the stage advises all of the audience what the correct answer is, and an entirely different question is presented to the next per-

Honorable Andrew Patton, page 3

son who volunteers. The members of the
audience who volunteer to try to answer
the questions propounded, remain at their
places in the theatre and speak through a
portable microphone.

"No member of the audience is com-
pelled or urged to participate, but any
member of the audience who wishes to do so
may have an opportunity to try to answer a
question.

"In addition to that portion of the
program hereinabove outlined, awards are
made by those who present the show to per-
sons who send in questions that are chosen
for propounding; and other awards are made
to those members of the audience who can
correctly answer a list of questions which
the announcer states. Each member of the
audience has a tally card upon which he may
check as right or wrong each statement
included in this list. Usually, there are
nine or ten such statements, such as: 'A
latchet is a shoestring.' Every member
of the audience has an equal opportunity to
answer the questions, and each of those who
correctly answer all of the questions is
paid an equal amount for his contribution
of his talent to the evening's entertain-
ment. There is no drawing, no 'lucky num-
ber', nor prize, to be decided by lot,
luck or chance. Instead, each person who
participates is paid for his participation
in direct proportion to the value of his
services."

Section 47 of Article III of the Constitution
of Texas reads:

"The Legislature shall pass laws
prohibiting the establishment of lot-
teries and gift enterprises in this
state, as well as the sale of tickets
in lotteries, gift enterprises or other
evasions involving the lottery princi-
pal, established or existing, in other
states."

Honorable Andrew Patton, page 4

Pursuant to such command the Legislature passed Article 634 of the Penal Code, which reads as follows:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than One Hundred ($100) Dollars nor more than One Thousand ($1,000) Dollars; or if any person shall sell, offer for sale or keep for sale any tickets or part tickets in any lottery, he shall be fined not less than Ten ($10) Dollars nor more than Fifty ($50) Dollars."

In City of Wink vs. Griffith Amusement Company, 100 S. W. (2d) 695, (Tex. Sup. Ct.), the court said:

"The State Penal Code does not define a lottery, but our courts have interpreted it in accordance with public usage, to mean a scheme or plan which provides for a distribution of prizes by chance among those who have paid, or agreed to pay, a consideration for the right to participate thereon. 28 Tex. Jur. p. 409, Sec. 2, and cases cited in the notes."

The Federal Circuit Court of Appeals in the case of Peek vs. United States, 61 F. (2d) 973, has given the following definition of a lottery:

"A scheme for the distribution of prizes or things of value by lot or chance among persons who have paid or agree to pay a valuable consideration for the chance to obtain a prize. And again: A scheme by which a result is reached by some action or means taken, in which result man's choice or will has no part, nor can human reason, . . . sagacity or design enable him to know or determine . . . until the same has been accomplished."

Honorable Andrew Patton , page 5


Under your statement of the facts as quoted by us, two of the elements of a lottery are clearly discernible, i. e., a prize in money or thing of value, and payment of a consideration for the chance to participate in the program through attendance at the theatre, paying an admission price therefor. Whether the element of chance is sufficiently established is a more perplexing problem .

In the case of Boatwright v. State, 118 Tex. Cr. R. 381, 38 S. W. (2d) 87, the Court of Criminal Appeals held that a punch board wherein were placed different checker problems, the same to be completed by the participant after paying a fee for the privilege of playing, did not constitute a lottery, even though prizes were awarded those working out the best solution. We quote from the opinion:

"Any scheme for the distribution
of prizes by chance, under our statute,
is a lottery. Queen v. State, 93 Tex.
Cr. R. 173, 246 S. W. 384; Stanger v.
State, 107 Tex. Cr. R. 574, 298 S. W. 906.
The phrase 'game of chance' is defined in
27 Corpus Juris at page 968, as follows:
'It is a game determined entirely or in
part by lot or mere luck, and in which
judgment, practice, skill or adroitness
have honestly no office at all, or are
thwarted by chance; a game in which
hazard entirely predominates.'

"Without approving in its entirety
the foregoing definition when considered
in connection with our statute denouncing
lotteries, it is observed that the success
of the player in the game under considera-
tion depends upon practice, experience,
or skill, Other than the ordinary chance
or contingency which is involved in prac-
tically every human endeavor, the element
of chance is not present. The prize is
drawn as a reward for the skill of the
player, and not by chance. The predominant
element in the game is one of skill. . ."

Honorable Andrew Patton, page 6

See also McFae v. State, 46 Tex. Cr. R. 489, 81 S. W. 741; Hoff v. Daily Graphic, 230 N. Y. S. 360, 103 A. L. R. 870.

From a careful study of the decisions as applied to the facts presented by you, we conclude that the radio program does not violate the lottery laws of this State.

Trusting that we have satisfactorily answered your inquiry, we are,

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Benjamin Woodall*

Benjamin Woodall
Assistant

BW:LW

DEC 22, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY *BWB*