Leo A. DEMARIS and Raymond Lefkowitz, Appellants,

v.

The STATE of Texas, Appellee.

No. 6541.

Court of Civil Appeals of Texas.

Beaumont.

April 25, 1963.

Rehearing Denied May 22, 1963.

James S. McGrath, Walter M. Sekaly, Beaumont, for appellants.

W. G. Walley, Beaumont, for appellee.

HIGHTOWER, Chief Justice.

This is an appeal from a judgment of the trial court declaring certain articles and paraphernalia seized in a raid by police officers July 8, 1961, on an establishment run by appellants known as the Oyster Bar, to be gambling devices, equipment and paraphernalia and confiscating the money found therewith in accordance with Articles 636–637, Penal Code of Texas, Vernon's Ann.P.C., and finding that said place was a gambling house. The substance of appellants' first five points is that there is no evidence or insufficient evidence to warrant the court's confiscation of the sum of Three Thousand Three Hundred Sixty-four Dollars and Ten Cents ($3,364.10) in cash and checks seized by the officers on the day of the raid in said establishment.

The Statement of Facts unequivocally shows that the Oyster Bar was a gambling house, as that term is defined in Schepps v. City of El Paso, Tex.Civ.App., 338 S.W.2d 955, so it is unnecessary to relate the evidence in this respect. Suffice it to say that the State proved by several witnesses, and there was no evidence to the contrary, that said witnesses had made several bets on horse races and baseball during the year immediately preceding the raid, and that one had actually made two such bets aggregating the sum of $105.00 on the day of the raid.

The following pertinent parts of Articles 636–637, Penal Code of Texas, control our decision in the matter:

Article 636:

"It shall be the duty of every * * * peace officer * * * to seize and take into his possession all gaming tables, devices and other equipments or paraphernalia of gambling houses * * *. Thereupon * * * [the] district judge shall * * * issue a written notice to the owner * * * commanding him to appear * * * and show cause why such articles should not be destroyed. * * *"

Article 637, Sec. 3:

"If upon a hearing of the matter referred to in Article 636 * * * the * * * District Judge * * * shall determine that the property seized is a gaming table, bank or gambling para-.

phernalia and equipment per se, or * * * shall determine that the same, or any part thereof, *was in fact used as equipment or paraphernalia for a gambling house or was being used for gaming purposes, then any money or coins seized in or with said equipment or paraphernalia shall, by order of the Court, be declared confiscated * * *."* (Emphasis added.)

■ We have no hesitancy in declaring that Sec. 3 of Art. 637, supra, does not mean that any and all money, simply because it is seized in or with a raid on a gambling house, is subject to confiscation. Rather, we construe it to mean that such money is subject to confiscation only if it is shown to have been commingled in or with said equipment or paraphernalia in such manner as to constitute it an integral part thereof. So, we come to the point of determining whether the sum of Two Thousand Two Hundred Sixty-nine Dollars and Thirty-three Cents ($2,269.33) in cash and checks found on the person of appellant Leo Demaris was of such nature, and we hold that it was not.

■ H. C. Walling, a lieutenant in the Special Service Detail of the Beaumont Police Department, along with several other persons, personally conducted the raid on the day in question. Armed with a search warrant and order of seizure, he testified that he personally searched appellant Demaris and took from his person the amount of money and checks above referred to. He testified that he also took 57 "bet slips or wagering slips, baseball parlays, whatever you want to call them * * * from the person of Leo Demaris." He qualified as an expert in the investigation of vice and gambling, etc., and stated that he had made a special study of gambling paraphernalia and bookmaking procedures and had become familiar with methods, techniques, paraphernalia and tools in the so called occupation of bookmaking. His testimony is undisputed in the record that the bet slips, etc., that he obtained from the person of Demaris was gambling equipment. However, the record is devoid of any showing that this gambling equipment was commingled or connected in any manner with the money and checks taken from Demaris' person. Although the money and checks were stated to have been obtained from Demaris' pants pockets, there is no showing of what parts of his person said gambling equipment was taken. On the basis of our construction of Art. 637, supra, we hold that the trial court erred in confiscating the property taken from the person of appellant Demaris.

■ The State correctly urges that it had the right to prove its case by circumstantial evidence. Mills v. Browning, Tex. Civ.App., 59 S.W.2d 219. However, we find no evidence of such nature beyond a scintilla of conjecture and surmise.

We hold similarly in regard to the sum of $884.70 and a diamond ring taken from the person of appellant Lefkowitz during the raid and in regard to the sum of $144.07 taken from the cash register of the establishment, and the sum of $66.00 taken from a cigar box therein. We make this holding on the basis that there is no evidence in the record that said sums of money and ring were found commingled in or with any gambling equipment or paraphernalia as contra-distinguished from the fact that they were found in or with the carrying-out of the raid.

Taken out of context with his own and other testimony in the record, that of witness Walling's makes it appear that the property above referred to as taken from the person of Lefkowitz was commingled with gambling equipment so as to have been an integral part thereof. His testimony in this respect is as follows:

"Q. What is the next item of property or paraphernalia in connection with the search warrant introduced into evidence?

"A. Several baseball odd sheets, price list of odds on different baseball teams.

"Q. From whom did you take those?

"A. From the person of Raymond Lefkowitz."

Notwithstanding this testimony, the record indisputedly reflects that Walling did not personally search or take any objects whatsoever from the person of appellant Lefkowitz. The discrepancy in his testimony is easily reconciled however by reason of the fact that it appears that he was the person primarily in charge of the raid and, although he did not personally search and obtain anything from the person of Lefkowitz, that the said sum of money and ring were actually taken from said person by one Lt. Lawhon, who subsequently turned it over to Walling. The following testimony of witness Walling is pertinent:

"Q. What else did you take, Captain, at that time, pursuant to that search warrant?

"A. Currency taken from the person of Raymond Lefkowitz *by Lt. Lawhon.* (Emphasis added.)

"Mr. McGraff: We object to that hearsay unless this officer was there and saw it.

"The Court: Sustain the objection."

■ It is quite clear from testimony of said witness Lt. Lawhon that he alone, not Captain Walling, personally made the search and seizure on the person of appellant Lefkowitz and that although he stated that he found bet slips on Lefkowitz' person, that he was unable to locate them at the time of trial and they were not identified or introduced in evidence. Therefore, we hold that the trial court erred in its findings in regard to the property taken from the person of Lefkowitz.

■ The money above referred to as having been seized from the cash register and cigar box of the establishment was likewise unidentified or proved to have been taken in or with gambling equipment or paraphernalia within the meaning of Art. 637, supra, as we have hereinabove construed it. It appears from the record that the Oyster Bar was a typical beer serving establishment, as well as a gambling house, and served were items such as sandwiches, potato chips, soda water, cold cuts and oysters on the half shell. It appears that money taken from the cash register and cigar box was used in connection with the sale of such articles. A witness for the State, Clyde Rush, who was Acting Inspector of Detectives of the Beaumont Police Department on the day of the raid, seized these monies. He stated that there was nothing about the cash register itself that indicated that it had anything to do with gambling; that it was located at a convenient place behind the bar for the selling of food, soft drinks, etc.; that he didn't know of his knowledge if this money had anything to do with or was connected with gambling. His testimony regarding the money in the cigar box was the same. There was no testimony to the contrary. We, therefore, conclude that the trial court also erred in its findings in connection with these sums of money. In fact, there was no evidence that any of the money herein involved had been used for gambling. Although there is much evidence that many bets were made at the Oyster Bar, there is no evidence that any bets were actually paid off there, or any place else, with any money from any source.

We find it unnecessary to consider the appellant's last point of error. The judgment of the trial court is reversed and judgment is here rendered in favor of all appellants in accordance with our opinion.

Reversed and rendered.